## APPEAL OF JOHN C. HILTON, ASSIGNEE.

APPEAL AND CERTIORARI TO THE COURT OF COMMON PLEAS OF ERIE COUNTY.

| 116 | 351 |
|-----|-----|
| 203 | ⁴105 |
| 116 | 351 |
| 207 | ³458 |
| 116 | 351 |
| 36 SC | ¹387 |

Argued April 27, 1887—Decided May 9, 1887.

The eighth section of the Act of April 27, 1855, P. L. 369, declares it "to be lawful for every lessee for term of years of any colliery, mining land, manufactory, or other premises, to mortgage his or her lease or term in the demised premises," etc. : Held,

1. That in view of the remedial purpose of the statute and the general expressions contained in the subsequent acts of April 3, 1868, P. L. 57,

and May 13, 1876, P. L. 160, the words "or other premises" are not to be restricted to leaseholds of like nature as colliery, mining or manufacturing leaseholds.

2. That a leasehold interest in a city lot for a term of years, the lessee paying a yearly rent and taxes and required to erect a building thereon, was within the operation of said act.

3. That under the said acts, on the failure of a mortagee of a leasehold, either to record the lease with his mortgage or to cause full and distinct reference to be made in the mortgage to the book and page where the lease is then recorded, the mortgage is without lien.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 104 January Term 1887, Sup. Ct.; Court below, No. 16 May Term 1885, C. P.

This was an appeal, with writ of *certiorari* thereon, by John C. Hilton, assignee of the Humboldt Safe Deposit and Trust Company, from the decree of the court below upon exceptions to the report of an auditor making distribution of the proceeds of a sheriff's sale of the property of John H. Welsh.

On February 28, 1829, Rufus S. Reed, the owner in fee of part of lot 2,039 in the then borough of Erie, executed a lease thereof to one Charles Lay for the term of nine hundred and ninety-nine years from November 1, 1830, at a yearly rent of $100 for the first eight years and of $65 thereafter, and all taxes,—"and that when the present store-house is removed, that the said Charles Lay, his executors, administrators and assigns, or some of them, shall build or cause to have built a brick house in place thereof."

On March 8, 1877, John H. Welsh became the owner of said leasehold by assignment of that date from James S. Sterrett and wife, which assignment was recorded on March 10, 1877, in deed book 58, page 232. Welsh took actual possession and continued therein until May 1883; after that date the premises were occupied by tenants under said Welsh until the time of the sheriff's sale, below.

1. On May 19, 1883, said Welsh, to secure a debt of $1,500, executed a mortgage of said leasehold to Charles M. Reed, which with the lease following it was recorded on May 23, 1883, in mortgage book 3, page 182.

2. On May 25, 1883, said Welsh made an assignment of said

leasehold to John S. Elliot, treasurer of the German Savings Institution of Erie, as collateral security for the payment of judgment No. 356 May Term, 1880, in favor of the German Savings Institution; said assignment was recorded on same day in contract book No. 2, page 536.

3. On May 25, 1883, said Welsh executed a mortgage of the same leasehold to Gustave Jarecki in trust for The Humboldt Safe Deposit Bank of Erie, to secure three notes amounting to $3,500 on which judgments were entered to Nos. 437, 438 and 439 November Term, 1884. The only reference to the lease in the mortgage was as follows: "being the same land or leasehold conveyed to the said John H. Welsh by James S. Sterrett by deed dated March 8, 1877, and recorded in deed book 58, page 232, by reference to which the origin of said leasehold and chain of title thereto will fully and at large appear." This mortgage was recorded on May 26, 1883, in mortgage book 2, page 661, but the lease was not recorded with the mortgage nor further reference to it than stated.

4. On July 23, 1883, the said Welsh, to secure a debt of $2,000, executed a mortgage of the same leasehold to W. W. Johnson, trustee for three creditors named. This mortgage contained the lease copied into it in full, and was recorded July 26, 1883, in mortgage book No. 3, page 280.

Said Welsh having failed to pay his indebtedness, the Humboldt Safe Deposit and Trust Company issued executions upon its judgments secured by mortgage to Gustave Jarecki, in trust, (3), and levies were made on the said leasehold. After said levy and before sale, John Elliot, treasurer of the German Savings Institution, claimed the said leasehold by virtue of the assignment above referred to, (2), and on March 2, 1885, upon the sheriff's petition under the Interpleader Act, a feigned issue was awarded to determine the respective rights of the claimant and the execution plaintiffs.*

Pending these interpleader proceedings judgment was obtained to No. 16 May Term, 1885, by Charles M. Reed upon his mortgage, (1), and on *levari facias* to No. 76 May Term, 1885, the leasehold of said Welsh was sold for $4,200, the

---

* See Maurer v. Sheafer, *ante*, p. 339.

money paid into court and *Mr. C. L. Baker* appointed auditor to make distribution.

Before the auditor, John C. Hilton, assignee of the said Humboldt Safe Deposit and Trust Company, claimed the full amount of the debt and costs of the judgments (secured by the mortgage of May 25, 1883,) by virtue of his executions and levy before referred to, as being the first liens after the payment of the ground rent to the owner in fee; or, if the auditor should be of opinion that the mortgages were valid liens upon the leasehold, then that by virtue of the said mortgages he was entitled to the amount of money remaining after the payment of the mortgage debt of Charles M. Reed.

The auditor in his first report, holding that the words " or other premises," in the eighth section of the act of April 29, 1855, P. L. 369, are synonymous with " other lands and tenements," and that the mortgage from said Welsh to Charles M. Reed came within the provisions of that act, awarded payment of the judgment thereon. He further held that the assignment of the leasehold by said Welsh to John Elliot, treasurer, etc., was made as collateral security, was therefore but a mortgage : Russell's App., 15 Penn. St. 319; but being unrecorded in the mortgage book was an unrecorded mortgage · and not a lien on the fund : Luch's App., 44 Penn. St. 519. He further holding that as, in his opinion, under Sturtevant's App., 34 Penn. St. 149; Ladley v. Creighton, 70 Idem 490, and the act of May 13, 1876, P. L, 160, the reference to the leasehold in the mortgage of said Welsh to Gustave Jarecki, in trust for the Humboldt Safe Deposit and Trust Company (3), was sufficiently full and distinct, awarded the balance of the fund to John C. Hilton, assignee of said company, on the said last mentioned mortgage.

To this report John C. Hilton, assignee, excepted :

That the auditor erred in not allowing the claim of exceptant in full with costs, the fund having been raised from the sale of personal property upon which this exceptant had a lien prior to all other liens except ground rent, by virtue of his executions issued sur judgments Nos. 437, 438 and 439 of November Term 1884, in the Court of Common Pleas of Erie county, and levied in due form of law, as appears by the record of said court put in evidence at the hearing before the auditor.[1]

W. W. Johnson, trustee, excepted:

That the auditor erred in not appropriating the sum of $2,249.23 to the mortgage of W. W. Johnson, trustee, said mortgage being the second lien on the property sold and next to the lien of mortgage to Charles M. Reed, instead of to the mortgage to Gustave Jarecki, in trust, said mortgage being no lien on the property sold.[2]

The court, WM. A. GALBRAITH, P. J., dismissed the exception filed by J. C. Hilton, assignee,[1] and sustained that filed by W. W. Johnson, trustee,[2] and referred the report back to the auditor to state a distribution accordingly. The second report being filed, the exception thereto by John C. Hilton, assignee,[1] was renewed and dismissed, the report confirmed and distribution decreed in accordance therewith. Thereupon, this appeal was taken by John C. Hilton, assignee, and errors assigned to the overruling of his exception[1] and the sustaining of that filed by W. W. Johnson, trustee.[2]

*Mr. Joseph M. Force*, (with whom was *Mr. Henry C. Yard*), for the appellant.

1. The 8th section of the act of April 27, 1855, P. L. 369, by the use of the words "or other premises," does not authorize the mortgaging of all leasehold premises regardless of their character, but these words, following as they do a series of specific terms, refer only to premises of a like nature or kind to those previously enumerated: Com. v. Wickersham, 90 Penn. St. 311; Pardee's App., 100 Idem 408.

The act in question refers to the act of April 5, 1853, P. L. 295, entitled "An act to authorize mortgages of coal leases in Schuylkill county." That the specific coal leases mentioned in these acts are of a character widely differing from that of the ordinary leasehold estate, cannot be doubted. Coal in place is land; the grant of a right to mine and remove coal, although the instrument is called a lease, is a grant of an interest in the land itself: Hope's App., 3 East. R. 728. Gill v. Weston, 2 East. R. 407, was a case of a mortgage on an oil-lease, and the mortgage was sustained on this ground.

2. A leasehold is but a chattel interest, and this act of 1855 creating a lien on said interest, is such a departure from the principle of the original statute creating liens, and also from

common law liens, as to require a strict construction: Ester-ley's App., 54 Penn. St. 192; Roberts & Pyne's App., 60 Idem 400; Schenley's App., 70 Idem 98; Schmidt & Co. v. Armstrong, 72 Idem 355.

3. It is conceded that the original lease from R. S. Reed to Charles Lay was never recorded in the deed-books of the county, and the only record which existed in relation to it, was that in connection with the Reed mortgage and that con-tained in the deed from James S. Sterrett, to which reference was made in the mortgage to Gustave Jarecki. This convey-ance from Jas. S. Sterrett was the only title Welsh had to the property in question and this was in effect his lease. Hence the reference to the place. of record of this deed or lease, as contained in the mortgage to Gustave Jarecki, in trust, was a full compliance with the act.

*Mr. F. F. Marshall* (with him *Mr. E. L. Whittelsey*), for W. W. Johnson, trustee, appellee.

1. The act of April 27, 1855, P. L. 368, is a general act and was intended as its title expresses, "to amend certain defects in the law for the more just and safe transmission and secure enjoyment of real and personal estate;" and we think the legislature intended in the passage of the act to extend the enjoyment of just such leasehold estates as this. The phrase, "or other premises," when used in regard to estates, means, lands and tenements : 2 Bouv. L. D. 370.

2. These acts should receive a reasonable construction: Thomas v. Smith, 42 Penn. St. 68; Reed v. Clement, 3 W. N. 53; Dame's App., 62 Penn. St. 417.

3. Under the 8th section of the act of April 27, 1855, when a mortgage is executed upon a leasehold estate, it is necessary, in order to give it priority as against an execution creditor of the mortgagor, that the lease should be recorded with the mortgage : Sturtevant's Appeal. 34 Penn. St. 149; Ladley v. Creighton, 70 Idem 490.

The lease itself has never been recorded in the deed-books of the county—the only record of it being that with the mortgages of Reed and Johnson. No reference could be made to book and page, full and distinct, and therefore the reference in the mortgage to Gustave Jarecki created no lien on the estate mortgaged.

OPINION, MR. JUSTICE STERRETT:

This contention between creditors of John H. Welsh arose upon distribution of the fund produced by sheriff's sale of his leasehold interest in a lot held by him under lease for the term of nine hundred and ninety-nine years from November 1, 1830, and on which he had erected a three story brick store house.

One of the questions is whether such a leasehold estate is within the provisions of the act of April 27, 1855, and subsequent legislation on same subject, and may thus become the subject of a valid leasehold mortgage.

The purpose of the act, as stated in its title, is "to amend certain defects in the law for the more just and safe transmission and secure enjoyment of real and personal estate." The eighth section declares it "to be lawful for every lessee for term of years of any colliery or mining land, manufactory or other premises, to mortgage his or her lease or term in the demised premises, with all the buildings, fixtures and machinery thereon to the lessee belonging and thereunto appurtenant, with the same effect, as to the lessee's interest and title, as in case of the mortgaging of a freehold interest and title, as to lien, notice, evidence and priority of payment: *Provided*, that the mortgage be in like manner acknowledged and placed on record in the proper county, together with the lease, and that such mortgage shall in no wise interfere with the landlord's rights, priority or remedy for rents; and such mortgage may be sued as in other cases."

The first section of the act of April 3, 1868, provides that, "in all cases of mortgages upon leasehold estates, the mortgagee shall have the same remedies for collection thereof which mortgagees of real estate have under the laws of this commonwealth for the collection of such mortgages." This was followed by the act of May 13, 1876, declaring "that whenever a lease or term of years shall have heretofore been or shall hereafter be mortgaged under and by virtue of the provisions of the 8th section of the act of 1855, if the lease shall have been recorded in the deed books of the proper county before the execution of the mortgage, or shall be then recorded at the time of recording the mortgage, such recording shall be deemed a sufficient compliance with the requirements of said act with reference to recording such lease: *Pro-*

*vided always*, that full and distinct reference be made in said mortgage to the book and page where the said lease is recorded."

Appellant contended in the court below, as he does here, that the words, " other premises," in the section first above quoted, were employed in a restricted sense, intended to embrace only leasehold interests of same or like nature as colliery, mining or manufacturing leases. But, in view of the remedial purpose of the statute and the general expressions contained in the subsequent acts, the learned auditor and court below came to the conclusion that the words in question were used in the broader and more comprehensive sense of leaseholds generally, and therefore synonymous with the phrase " other lands and tenements." In this we think there was no error. The word " premises," as applied to realty, means " lands and tenements," and there appears to be no good reason why a more restricted meaning should be given to it in the act under consideration. Any other construction would exclude from the operation of the act, valuable leaseholds which were no doubt intended to be embraced, and thus fail to effectuate the general purposes expressed in the title of the act and recognized in subsequent legislation on same subject.

Having thus decided that upon a fair construction of the law, the leasehold, from the sale of which the fund was realized, was not excluded from its operation, the auditor proceeded to consider the objection to the validity of the mortgage represented by appellant, viz: that it was not recorded with the lease, nor does it refer to the record thereof as required by the act, and is therefore not a lien on the leasehold.

The lease was recorded with the prior mortgage to Charles M. Reed, May 23, 1883, in mortgage book 3, page 182. Appellant's mortgage dated May 25, 1883, was recorded the following day in mortgage book 2, page 661, but not with the lease. The body of the mortgage, however, contains this reference to the lease: " Being the same land and leasehold conveyed to the said John H. Welsh by James S. Sterrett by deed dated March 8, 1877, and recorded in deed book 58, page 232, by reference to which the origin of said leasehold and chain of title thereto will fully and at large appear." The auditor,

considering this reference to the lease a sufficient compliance with the requirement of the act of 1876, awarded the residue of the fund to appellant; but, on exception to his ruling, the court held it was not, and recommitted the report with instructions to award the residue to W. W. Johnson, whose mortgage was recorded two months later, but contained a *verbatim* recital of the lease. The residue of the fund was accordingly decreed to Johnson the appellee; and this forms the subject of complaint in several of the specifications of error.

It will be observed that the recital in appellant's mortgage contains no reference to the recording of the lease. It is merely a reference to the deed of 1877, by which Welsh acquired title to the leasehold premises. The lease itself was not recorded in 1877, nor for more than six years thereafter. The act of 1876, as we have seen, declares, " if the lease shall have been recorded in the deed books of the proper county before the execution of the mortgage, or shall then be recorded at the time of recording the mortgage, such recording shall be deemed a sufficient compliance with the act with reference to recording such lease : *Provided always*, that full and distinct reference be made in said mortgage to the book and page where the said lease is recorded."

It is quite clear that the recital relied on by appellant utterly fails to meet the requirements of the act, and hence the court rightly held that appellant's mortgage, although recorded prior to that of appellee, was not a lien on the leasehold premises.

Leasehold mortgages are wholly dependent on the acts above quoted for their validity as liens, and unless there is at least a substantial compliance with their requirements, the mortgagee acquires no right as a lien creditor. The failure of appellant to either record the lease with his mortgage, or to cause full and distinct reference to be made therein to the book and page where the lease was then recorded, is fatal to his claim on the fund.

The assignments of error are not sustained.

Decree affirmed and appeal dismissed at the costs of appellant.

MR. CHIEF JUSTICE MERCUR dissents.