Opinion by
Henderson, J.,
This appeal presents for our consideration the constitutionality of the Act of March 22, 1907, P. L. 31. The objection urged is that the subject of the statute is not clearly expressed in its title as required by sec. 3 of article III of the constitution. The title is “An act to provide for the assignment of counsel in murder cases, and for the allowance of expenses and compensation in such cases.” In examining the question we are to have *582 in mind the well-known principle that an act of assembly is only to be declared void when it violates the constitution clearly, plainly and in such a manner as to leave no doubt or hesitation. It must be manifest that the legislative department has overstepped the boundaries marked by the constitution before the courts are justified in nullifying a statute. The legislature comes directly from the people and by its enactment gives expression to the popular will. This will so expressed is the law of the land except where the constitution unquestionably forbids it. The reason for the constitutional provision in question is apparent. It was intended to prevent the incorporation into one bill of legislation on distinct and unrelated subjects. Its purpose is well stated in Road in Phœnixville, 109 Pa. 44. It is just as apparent that it was not the intention that the title should be an index to the contents of the bill. What is required is that the title fairly give such notice of the subject of the act as should lead to an inquiry into its details. Where the title is not deceptive and relates to one subject and is sufficient to put those interested on inquiry as to the contents of the bill the demand of the constitution is met, even though the various provisions by which the object of the bill is to be attained are not indicated in the title. A recent admonition from the Supreme Court in Com. v. Rapid Transit Street Ry. Co., 219 Pa. 11, indicates the true spirit of the constitutional requirement and suggests that brevity which does not mislead should be aimed at in the construction of titles of statutes. Such a title, though general, will cover all details and collateral matters naturally and properly incident to the subject: Stegmaier v. Jones, 203 Pa. 47. What, then, was the purpose of the act? This is indicated with reasonable clearness in the title. It is therein stated that the legislation relates to trials for murder and that provision is made for the assignment of counsel and for the allowance of expenses and compensation to them. The specific object is compensation to counsel appointed by the court to defend impecunious prisoners tried for murder. Prior to this enactment such services were gratuitously rendered according to the duty which the members of the bar owed to the court and to the public. Human sympathy and *583 a due sense of professional responsibility were considered to be the sufficient motive for action in such cases. The relation of the counsel so appointed was not one of contract with the accused, but was a gratuitous responsibility arising from the official relation of such counsel to the court. The right to compensation was denied because neither at common law nor by any statute was it authorized. This act was passed for the purpose of enabling poverty stricken persons accused of murder to more fully prepare a defense. Under its provision the attorneys appointed are not only allowed compensation, but may be reimbursed for their personal and incidental expenses connected with the discharge of the duty imposed. The provision for payment by the county is a reasonable if not a necessary incident. Indeed, it is not apparent how resort could be consistently made to any other fund than that provided by the county. And this view is not answered by the fact that statutory authority for the appointment of counsel for persons charged with crimes, who were financially unable to engage attorneys, had for a long time existed. There is no limitation on the power of the legislature to enact another law on the same subject with additional provisions relevant thereto. Light is thrown on the value of the title when we take into consideration the fact that the cost of the administration of criminal justice is, generally speaking, cast upon the county. Such has been the state of the law since the organization of the commonwealth. This extends to many cases where no statutory liability exists, as in the case of a prisoner taken ill at the trial or a juror in the box; the expenses of a coroner in a post-mortem examination; the lodging and board of a jury, and many other instances which might be enumerated. It was stated in general terms in McCalmont v. Allegheny County, 29 Pa. 417, “where no other provision is made for the expenses of the judiciary, the county in which the court sits is primarily liable.” Many statutes have been passed imposing costs in criminal prosecutions on the county for which it was not theretofore liable. All of the expenses incidental to the trial of causes are borne by the county except that portion particularly known as costs. The county is responsible for the maintenance of the facilities *584 for the administration of justice. It elects the district attorney, the sheriff and the clerk of the courts; it provides the jurors; and the charges of all these functionaries are payable from the county treasury. The act under consideration is an enlargement of the power of the court to direct the payment of expenses connected with criminal justice which the legislature deemed appropriate in certain cases and in line with the authorized action of these courts on kindred subjects and with many statutes fixing the liability for costs in such proceedings on the county. The assignment of counsel is a judicial act as is well known. As applied to a murder case it has reference to the appointment of an attorney or attorneys for one who is financially unable to secure his own counsel. There is no merit in the argument that it may be understood to refer to counsel for the prosecution. The district attorney is the lawfully appointed officer to prosecute the case and if he be disqualified the court will appoint a substitute, but this is in no sense the assignment of counsel, as that phrase is commonly and correctly understood. When reference is made to assignment of counsel by the court in a murder trial no one familiar with the course of criminal trials would fail to understand that what was meant was the assignment of counsel for the defendant, and when it is proposed that this be done by the court and that compensation be allowed to the person so appointed, the reasonable inference is that payment is to be made by the county. There is at least such a notice as would lead to an inquiry. The compensation to be allowed is not on any contract of the accused. The only reason for the assignment of counsel is that the defendant is not able to employ them, himself, and what he is not able to do the law steps in and does for him. The effect of the enactment is to increase, with the approbation of the court, the necessary charges for which the county is liable in the particular case and thus to place persons of a certain class tried for murder in a more advantageous position to secure a fair trial. This is reasonably implied in the title. We need not enter into an extended discussion of the numerous cases cited and carefully considered in the elaborate opinion of the court below. The line of cleavage between them is not always clear, *585 but we think none of them -is inconsistent with the conclusion at which the court arrived. The title of the Act of May 13, 1887, P. L. 108, is “An act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors, or any admixtures thereof.” Of this act and its title it was said in Com. v. Sellers, 130 Pa. 32, “There is not a single section, or clause of any section, in the act, that is not clearly germane to the subject expressed in its title.” This act, as is well known, is a comprehensive regulation of the sale of liquor and contains many provisions not directly suggested by the title. Among others, it is made a misdemeanor for any person with or without license to furnish by sale, gift or otherwise to any person any spirituous, vinous, malt or brewed liquors on any day upon which elections are now or may hereafter be held. It might be argued with much plausibility that the title of an act relating to the sale of liquor gave no notice that it would be a crime for one • not engaged in the business to give away such a beverage on a day when elections are held, but, as we have seen, this argument could not be successfully maintained. Hays v. Cumberland County, 186 Pa. 109; Baker v. Warren County, 11 Pa. Superior Ct. 170, and Read v. Clearfield County, 12 Pa. Superior Ct. 419, vindicate the judgment of the court below. The cases cited by the learned> counsel for the appellant are of two classes, in one of which the titles were clearly deceptive, as in Quinn v. Cumberland County, 162 Pa. 55; and in the other, there was a radical and unusual change in responsibility and a creation of burdens of a class none of which had been theretofore borne, without any intimation in the title of the enacted change, as in Dailey v. Potter County, 203 Pa. 593. In Stegmaier v. Jones, 203 Pa. 47, the title was clearly misleading. It authorized counties of the commonwealth to purchase and condemn bridges, but the body of the act transferred from the county commissioners, who are the lawful administrators of the financial business of the county, to the grand jury the final authority in such cases; “a shifting and uncertain body not usually, if ever, exercising such powers, nor elected by the voters.” The title gave no notice of this transfer of authority. Taking into consideration all the cases to which our attention *586 has been called we do not find a sufficient warrant for annulling the act in question. If there be any doubt on the subject that must be resolved in favor of the validity of the statute.
The judgment is affirmed.