# Weiss *v.* Swift & Company, Appellant.

*Constitutional law—Title of act—Sales of provisions—Eggs—New obligations or liabilites—Act of May 4, 1889, P. L. 87.*

The Act of May 4, 1889, P. L. 87, entitled "An Act relating to sale of provisions by description," is not defective in title, because the title does not specify the several articles of merchandise commonly understood as being comprehended within the term "provisions," to which the act relates.

The act applies to a sale of eggs, inasmuch as eggs are "provisions" as that term is commonly understood when spoken of as the subject of sale.

If new duties, obligations or liabilities are directly imposed by, or arise out of a legislative enactment, it is not necessary that the title should specifically and expressly show it, nor indicate what changes in law in those particulars will occur when the statute goes into operation.

The Act of May 4, 1889, P. L. 87, entitled "An Act relating to the sales of provisions by description," and creating "an implied contract or undertaking that the goods are merchandise, are sound and fit for household consumption," is not defective in title because it does not give notice of the new and additional contractual liability imposed on the vendor upon a sale of food products to a middleman, who buys not for consumption, but for the purpose of sale to others.

*Statutes—Construction—Things enumerated—Things ejusdem generis.*

When certain things are enumerated in a statute and then a phrase is used which may be construed to include other things, it is generally confined to things ejusdem generis; but in applying this principle of construction, and in determining what things are ejusdem generis, regard must be had to the general subject to which the act relates. Things which plainly belong to the same class when one subject is being considered might belong to an entirely different class when considered with reference to another subject. The rule would be absurd if under the head "other" nothing can be included in the construction of the act which is not exactly the same in every particular as the thing specified. When the particular word or words exhaust the whole genus, the general term will not be regarded as surplusage, but will be construed to refer to a larger class. This must be so, if regard be had to the rule, which is more imperative than the rule ejusdem generis that a statute is to be considered as a whole, so that, if possible, effect will be given to every part of it.

A statute entitled "An Act relating to sales of provisions by descrip-

tion," and specifying in the body of the act sales "of green, salted, pickled or smoked meats, lard and other articles of merchandise used wholly or in part for food," applies to the sale of eggs.

*Appeals—Assignments of error—Charge—Points—Failure to request instructions.*

Error cannot be assigned of what was not said by a trial judge, without request so to charge.

Where a point is drawn in the language of the Act of May 4, 1889, P. L. 87, entitled "An Act relating to sales of provisions by description," the court cannot be convicted of error in affirming the point, without further instructing the jury as to the time when articles must correspond with the description, and be sound and fit for household consumption in order to fulfill the implied contract or undertaking created by the statute. If more definite instructions as to time were deemed necessary, specific request should have been made for them.

*Contract—Consideration—Sufficiency of consideration.*

A very slight consideration, provided it be valuable and free from fraud, will support a contract.

Argued Oct. 17, 1907. Appeal, No. 107, Oct. T., 1907, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1906, No. 1,541, on verdict for plaintiff in case of Jacob D. Weiss v. Swift & Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover damages for breach of an implied warranty in the sale of eggs. Before CARR, J.

CARR, J., charged in part as follows:

The question is whether there was a sale by sample or by inspection. The plaintiff claims there was a sale by name or description and also by sample, as well as an express agreement on the part of the defendant that they would not deliver musty eggs, or cases of musty eggs. That is to say, in a sale by sample, the law declares that there is an implied agreement on the part of the seller to deliver articles of the same quality, that is, of the same character and of the same kind as the sample which was shown when the bargain or sale was made. If you believe that was the contract of sale between these parties, and if you believe that in January, when the breach of the contract to

deliver came, that the cases of eggs that were offered to be delivered to the plaintiff were not up to the sample but were musty, then the plaintiff is entitled to recover and he is entitled to recover these figures which have been mentioned before you, $120 and $140, making $260, less $9.90.

Now, on the other hand, the claim on the part of the defendant is that this was a sale by inspection of the bulk of the articles, and while a sample was produced of twenty cases or five cases or ten cases, still the plaintiff had the opportunity to examine the bulk of the eggs he was buying, and, therefore, it was a sale by inspection. Not only that, but they claim before you that it was a sale of so many case counts, that is to say, it is the usage and custom of the trade that when a sale of eggs was made by case count, that the plaintiff was obliged to take and receive whatever was in those particular cases, no matter whether they were rotten eggs or musty eggs or whether they were below the sample of the eggs he had examined or below the quality of the bulk of the articles he had inspected. Therefore, the question before you is, which is the truth upon that point? Now you will remember the plaintiff's testimony that after he had seen the samples produced on the sidewalk in the twenty or forty cases from the carloads of No. 1's, he went with Bressler, the employee of Swift & Company, and examined the two carloads, and then not content with that, but upon the following day when he found the cases had been delivered to the cold storage warehouse, and he then knew he could make no further examination of them, before he said, "I will take these eggs," he had the promise on the part of Collins that if there were any musty cases of eggs, that he should not be compelled to receive them. Now that is the nerve of this case, because if you believe that, the plaintiff is entitled to recover, if you find that afterwards, and it is not denied here, that the eggs were musty when they came to be delivered in December and January.

Plaintiff presented this point.

1. It is also the law of this state that in every sale of merchandise used wholly or in part for food, the goods or merchandise shall correspond in kind and quality with the description given,

either orally or in writing, by the seller, and in every such sale of goods, unless the parties agree otherwise, there shall be an implied contract or undertaking that the goods or merchandise are sound and fit for household consumption. *Answer:* Affirmed. [2]

Defendant presented this point:

1. If the jury find from the evidence that the eggs were purchased outright and that no arrangement was made at the time of the execution of the contract for the return of any of the eggs should they become moldy or unmerchantable, then the mere fact that the defendants agreed to help Weiss out of his loss did not put any obligation upon defendant to do so because the arrangement or agreement was without consideration and, therefore, not binding on the defendant. *Answer:* That point is refused as it assumes there was no consideration. It may have been a consideration which was to the benefit and advantage of the defendant that such an arrangement should go through. [3]

Verdict and judgment for plaintiff for $277.31. Defendant appealed.

*Errors assigned* were (2, 3) above instructions, quoting them.

*John C. Bell*, with him *Samuel W. Salus*, for appellant.—The words "Meat" and "Lard" in the statute are followed by the phrase "and other articles of merchandise."

The effect of the words of the phrase, "and other articles of merchandise," as used in the statute, is to retain the meaning of the words that precede it and confine them to articles of the same kind or ejusdem generis: Beechwood Co.'s Appeal, 12 Pa. Dist. Rep. 430; Allen's Appeal, 81* Pa. 302; Pardee's Appeal, 100 Pa. 408; Renick v. Boyd, 99 Pa. 555; Bucher v. Commonwealth, 103 Pa. 528; and that being so it will be demonstrated by a perusal of the statute that the construction thus advanced is technically correct. If, then, this be the correct construction, it will be seen that the title of this act is constitutionally insufficient: Com. v. Kebort, 212 Pa. 289; Com. v. Hazen, 207 Pa. 52· Stegmaier v. Jones 203 Pa. 47; Dailey v.

Potter County, 203 Pa. 593; Bennett v. Sullivan County, 29 Pa. Superior Ct. 120; Com. v. Samuels, 163 Pa. 283; Dorsey's App., 72 Pa. 192.

The title of the act of May 4, 1889, it will be seen, treats only of sales by description. It says absolutely nothing regarding warranties, and does not give the slightest hint of their existence, in the act itself: Com. v. Dickinson, 1 W. N. C. 185; Perkins v. Phila., 156 Pa. 554; Smith's Petition, 12 Pa. Dist. Rep. 333; Allegheny County Home's Case, 77 Pa. 77; McKeesport v. Owens, 6 W. N. C. 492; Taggart v. Commonwealth, 102 Pa. 354.

*Francis S. Lewis*, for appellee.—The act is constitutional: Com. v. Charity Hospital of Pittsburg, 198 Pa. 270; Blood v. Mercelliott, 53 Pa. 391; Fredericks v. Penna. Canal Co., 109 Pa. 50; Commonwealth v. Sellers, 130 Pa. 32; Bradley v. Pittsburg, 130 Pa. 475; Rodebaugh v. Philadelphia Traction Co., 190 Pa. 358; Sugar Notch Borough, 192 Pa. 349; Peterson v. Delaware River Ferry Co., 190 Pa. 364; Middletown Road, 15 Pa. Superior Ct. 167; Commonwealth v. Moir, 199 Pa. 534.

The doctrine of ejusdem generis as set up by appellant does not apply: State v. Broderick, 7 Mo. App. 19; Chesapeake, etc., Ry. Co. v. Bank, 92 Va. 495; Henderson v. Ry. Co., 81 Mo. 605.

Opinion by Rice, P. J., July 15, 1908:

The first section of the Act of May 4, 1889, P. L. 87, entitled "An act relating to sales of provisions by description," reads as follows: "In every sale of green, salted, pickled or smoked meats, lard and other articles of merchandise, used wholly or in part for food, said goods or merchandise shall correspond in kind and quality with the description given, either orally or in writing, by the vendor; and in every sale of such goods or. merchandise, unless the parties shall agree otherwise, there shall be an implied contract or undertaking that the goods or merchandise are sound and fit for household consumption." This action grew out of a sale of eggs. It is argued that it was

erroneous to affirm plaintiff's first point, which was drawn in the language of the act, because the act offends against sec. 3, article III of the constitution.

It cannot be successfully asserted that the title of an act which shows that the subject of legislation is "sales of provisions by description" is defective because it does not specify the several articles of merchandise, commonly understood as being comprehended within the term "provisions," to which the act relates. Nor can it be asserted that eggs are not comprehended in the term "provisions," as that term is commonly understood when spoken of as the subject of sale. See Commonwealth v. Caldwell, 190 Mass. 355. We think it clear, therefore, that the doctrine of Commonwealth v. Kebort, 212 Pa. 289, cannot be applied to this act.

But it is contended that prior to the passage of this act there was no implied warranty of soundness or wholesomeness arising upon a sale of food products to a middleman, who buys not for consumption but for the purpose of sale to others, and that the title of the act is defective because it does not give notice that such additional contractual liability is imposed on the vendor. It is true there is a class of cases in which it has been held that when there is nothing in the words of the title, or in the nature of the subject of legislation as expressed in the title, to indicate that the powers, duties or obligations of counties will be affected by the legislation, a provision imposing an entirely new duty, obligation or liability on counties, in respect of a subject, or branch of a general subject, which was not before a county affair, will not be sustained. Road in Phœnixville, 109 Pa. 44; Quinn v. Cumberland County, 162 Pa. 55; Pierie v. Philadelphia, 139 Pa. 573; Dailey v. Potter County, 203 Pa. 593; Bennett v. Sullivan County, 29 Pa. Superior Ct. 120, are some of the cases of that class. In neither of the last two cases, however, is the correctness of the decision in Hays v. Cumberland County, 5 Pa. Superior Ct. 159, affirmed by the Supreme Court in 186 Pa. 109, questioned; and yet in the act there sustained the title, "An act to define and suppress vagrancy," was held sufficient to support a provision imposing upon counties liability for the costs incurred in the arrest and commitment of vagrants.

So in the recent case of Commonwealth v. Darmska, 35 Pa. Superior Ct. 580, it was held that the title "An act to provide for the assignment of counsel in murder cases, and for the allowance of expenses and compensation in such cases" was sufficient to sustain the provision for the payment of the same by the county. In neither of these acts are counties mentioned in the title, or the fact set forth therein that a liability is imposed on them; the decisions sustaining them are, nevertheless, reconcilable with the cases of the other class upon the ground that the nature of the subjects of legislation, as expressed in the titles, is such as to indicate that counties are affected by the legislation. To illustrate what is meant by this suggested distinction between the two classes of cases, I refer to the act of May 11, 1874, the title of which is "Relating to payment of costs in cases of felonies." As the subject expressed in the title is one in which counties were directly interested before— broadly speaking, a county affair—it is scarcely supposable that anyone would contend that the provisions affecting the liability of counties are unconstitutional because neither counties nor the substance of the provision are mentioned or set forth in the title. Many similar illustrations drawn from statutes under which we are acting every day might be given. But this distinction is very clearly pointed out in the opinion of Judge PORTER in Bennett v. Sullivan County, 29 Pa. Superior Ct. 120, and of Judge HENDERSON in Commonwealth v. Darmska, and need not be further enlarged upon here.

Passing these classes of cases, the first of which is recognized as exceptional (Allentown v. Wagner, 214 Pa. 210) and looking at the question now before us in the light of principles established by a host of authorities, we are unable to assent to the general proposition, towards which the appellant's argument logically tends, that if new duties, obligations or liabilities are directly imposed by, or arise out of, a legislative enactment, the title must specifically and expressly show it, or at least indicate what changes in the law, in those particulars, will occur when the statute goes into operation. If this were the general rule, very many acts that have been declared constitutional could not have stood the test, and very many more, the

validity of which has never been questioned, would be void and
of no effect.   Fortunately, the constitutional provision, which
was adopted for a wise purpose, has been made effectual for
the accomplishment of that purpose without putting a construc-
tion upon it which would impede proper legislation.   In a lead-
ing case upon the subject it was said: "The purpose of the
amendment is to prevent a number of different and uncon-
nected subjects from being gathered into one act, and thus to
prevent unwise or injurious legislation by a combination of
interests.   Another purpose was to give information to the
members or others interested, by the title of the bill, of the con-
templated legislation; and thereby to prevent the passage of
unknown and alien subjects, which might be coiled up in the
folds of the bill.   The amendment was found necessary to cor-
rect the evils of unwise, improvident and corrupt legislation,
and therefore is to receive an interpretation to effectuate its
true purpose.   It would not do to require the title to be a com-
plete index to the contents of the bill, for this would make
legislation too difficult, and bring it into constant danger of
being declared void.   But on the other hand the title should
be so certain as not to mislead:" Dorsey's Appeal, 72 Pa. 192.
Two years later the court said: "The course of decision in this
court has been intended to carry out the true intent of the
amendment of 1864, as to the title and subject of bills, instead
of resorting to sharp criticism, which must often bring legisla-
tion to nought.   The amendment of 1864 was in substance
proposed in the constitutional convention of 1837–38, and re-
jected because it was feared it would render legislation too
difficult and uncertain and lead to litigation.   It will not do,
therefore, to impale the legislation of the state upon the sharp
points of criticism, but we must give each title, as it comes be-
fore us, a reasonable interpretation, ut res magis valeat quam
pereat.   If the title fairly gives notice of the subject of the act,
so as reasonably to lead to an inquiry into the body of the bill,
it is all that is necessary.   It need not be an index to the con-
tents, as has often been said.   But on the other hand it should
not mislead or tend to avert inquiry into the contents, as was
held in the case of the Union Passenger Railway Co., decided

at Philadelphia in 1873:" Allegheny County Home's Appeal,
77 Pa. 77. It is not worth while to attempt a restatement of
the principle. In all of the cases that have arisen since, in-
cluding Commonwealth v. Darmska, supra, and Commonwealth
v. Broad Street Rapid Transit Street Railway Co., 219 Pa. 11,
the latest reported cases in the Supreme Court and in this court
upon the subject, this construction of the constitutional amend-
ment of 1864 has been recognized uniformly, and very often
in the words above quoted, as the proper construction of sec. 3,
article III of our present constitution. We will not prolong
this opinion by a citation of any of this long line of cases, ex-
cepting some of those in which titles in the very form of the
title under consideration here have been held sufficient. In
Dorsey's Appeal, 72 Pa. 192, the title was "An act relating
to the liens of mechanics, material men and laborers upon
leasehold estates and property thereon in the county of Ve-
nango." The objection that freehold estates were not within
the title of the act, and therefore the sixth section, under which
the claims in suit were filed, was unconstitutional, was sus-
tained. But in the discussion of the case Justice AGNEW, who
delivered the opinion of the Supreme Court, said: "The word
'subject' has a large signification, often embracing different
kinds, different classes, and various modes, all belonging to
the general subject. The word 'estates' is itself an example,
embracing fees, fee tails, estates for life, and estates for years,
commonly called leaseholds. Had the qualifying term 'lease-
holds' been omitted in this title, all the various kinds of estates
of freehold would have been comprehended within the title,
and the sale of a freehold interest under the lien would have
been good. Mere generality of meaning in the title ought not
to avoid a law. For instance, the title, 'An act relating to
executions,' is quite general as an expression of the subject of
the act; yet no one would doubt the power of the legislature,
under this title, to provide for the various kinds of executions
generally comprised within the term execution; as, for example,
writs of fieri facias, liberari facias, levari facias, venditioni ex-
ponas, etc. So an act relating to actions might include cove-
nant case, debt, etc. But a restriction in a title, which tends to

mislead, stands on a different footing." In Beckert v. City of Allegheny, 85 Pa. 191, and Dewhurst v. City of Allegheny, 95 Pa. 437, the title considered was "An act relating to grading, paving, curbing and otherwise improving Troy Hill Road in the City of Allegheny." It was held that so much of the act as provided for assessment of part of the cost of the work upon property in Reserve township was unconstitutional; but assessments upon property in the city of Allegheny were sustained. In In Re Airy Street, 113 Pa. 281, the title was, "An act relating to streets in the several boroughs of Montgomery county." The question of the sufficiency of the title was raised and while it is, perhaps, not justifiable to say that the court declared it to be sufficient, it is justifiable to say that the court did not declare it wholly insufficient. In Commonwealth v. Lloyd, 2 Pa. Superior Ct. 6, affirmed by the Supreme Court in 178 Pa. 108, the title, "An act relating to the county commissioners of Cambria county," was considered, and in an elaborate opinion by Judge WILLARD, in which all the earlier cases are reviewed, was held to be sufficient. In Kelley v. Mayberry Township, 154 Pa. 440, it was held that the Act of June 11, 1879, P. L. 126, entitled "An act relative to actions brought by husband and wife or by the wife alone for her separate property, in cases of desertion," does not offend against either clause of the constitutional provision. In Goebeler v. Wilhelm, 17 Pa. Superior Ct. 432, it was held that a clause in the act of 1897 forbidding the giving of punitive damages was constitutional, and was cognate to the subject expressed in the title which was "An act relating to libel and its punishment." In Commonwealth v. Mintz, 19 Pa. Superior Ct. 283, the title "An act relating to keepers of junk shops, and second hand dealers, in cities of this commonwealth," was held sufficient to sustain legislation which imposed new duties, obligations and liabilities upon such persons. In Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186, we based the decision, in part, upon the Act of April 13, 1887, P. L. 21, entitled "An act relative to sales by sample," but without discussing the constitutionality of the act, as that question was not raised. While we are on this subject, it will not be out of place to notice that there are more than a dozen acts,

some of them very familiar, in the pamphlet laws of 1874, the titles of which are in the precise form of the title under consideration. And an examination of the pamphlet laws of other years shows that it is a very common form of title, and suggests how far-reaching would be a decision that by reason of its vagueness it is never permissible. We do not say that such a title is always sufficient, but we do say that the title in question is as clearly so as any that is referred to in the cases last cited. It is not deceptive nor misleading, and the provisions of the act all relate, and are cognate, to the one general subject expressed therein. While the title does not convey to the reader knowledge of the changes in the law of sales that the act makes, or of the duties, obligations and liabilities it imposes on the vendor, or of the incidents or consequences of a sale of provisions by description it creates, it is sufficient to put legislators and others interested in the subject upon inquiry as to those matters. We conclude that the act under consideration is free from constitutional objection.

The next inquiry suggested by the arguments of counsel is as to the scope of the act. Does it include sales of eggs? If the words were "every sale of green, salted, pickled or smoked meats, lard and other articles of merchandise," without more to indicate the subjects of sale intended to be covered, there would be propriety in applying the general principle of construction, that when certain things are enumerated, and then a phrase is used which might be construed to include other things, it is generally confined to things ejusdem generis. Indeed, there would be a necessity to resort to this principle in order to avoid giving the act a wider scope than the title indicates; and, it is to be borne in mind, a construction which would make an act unconstitutional, wholly or in part, is to be avoided if possible. But in applying this principle of construction, and in determining what things are ejusdem generis, regard must be had to the general subject to which the act relates. Things which plainly belong to the same class when one subject is being considered might belong to an entirely different class when considered with reference to another subject. The rule would be absurd if under the head "other" no thing can

be included in the construction of the act which is not exactly the same in every particular as the thing specified. Nor has it been so applied. For example, in Renick v. Boyd, 99 Pa. 555, the act relating to the action of replevin "to recover timber, lumber, coal or other property severed from the realty," was held not to include growing crops. But in the same connection it was declared by the court that slate, marble, iron ore, zinc ore, and all other forms of minerals and ores in place, building stone and fixtures and machinery of every description which have been permanently affixed to the realty would be covered. "To all of these the expression 'other property' in the act, may well be applied." See also Hilton's Appeal, 116 Pa. 351, as to the application of the rule in the construction of remedial legislation. Moreover, it has been held upon sound reason that when the particular word or words exhaust a whole genus the general term will not be regarded as surplusage but will be construed to refer to a larger class. This must be so, if regard be had to the rule, which is more imperative than the rule ejusdem generis, that a statute is to be considered as a whole, so that, if possible, effect will be given to every part of it. Here the subject to which the act relates, as shown by the body of it, as well as by its title, is the sale of provisions by description, and considering the specific words "meats" and "lard" as furnishing a sample of the kind of provisions referred to, the words "other articles of merchandise," upon the proper application of the rule ejusdem generis, would be confined to such provisions as are "used wholly or in part for food," and this would include eggs. We take it, therefore, that if the last quoted words had not been added in the statute, the words "other articles of merchandise" would have included eggs, because, having regard to the subject of legislation, they are of the same kind of things that are specifically mentioned. At any rate, by adding the words "used wholly or in part for food," the legislature set up the standard of similarity to the things specifically mentioned to which the other articles of merchandise must conform; and no principle of construction requires us to impose any other test, except that the articles of merchandise come up to this standard, and, in addition be such as are comprehended within the

term provisions, as that term is commonly understood when used in such connection as this. It follows that sales of eggs by description are within the scope of the act.

Complaint is made because the court affirmed the plaintiff's first point without instructing the jury, in that connection, as to the time when the articles must correspond with the description, and be sound and fit for household consumption in order to fulfill the implied contract or undertaking created by the statute. As already stated, the point was drawn in the language of the act and embodied a legal principle directly applicable to the case. Therefore the affirmance of it was not erroneous. If in view of the special facts of the case and the mode of trial more definite instructions as to the question of time were deemed necessary by the defendant's counsel, it seems reasonable to suppose that specific request therefor would have been made. In Burkholder v. Stahl, 58 Pa. 371, it was declared to be a general rule, which ought never to be departed from excepting in very flagrant omissions by the court plainly operating positively to mislead the jury, that error cannot be assigned of what was not said by the trial judge without request so to charge. This rule has been recognized and applied in numerous cases, down as late as Tucker v. American Car & Foundry Co., 218 Pa. 323. In Kaufman v. Pittsburg, Carnegie and Western R. R. Co., 210 Pa. 440, there is a very pertinent illustration of the proper application of the rule, because there, as here, the complaint was that the court failed to make certain additional statements in connection with the answers to points, which statements the other party had not requested should be made. The complaint was not sustained by the Supreme Court. We need not cite other cases upon a matter of practice that is so well settled. It is enough to say, after examination of the charge as a whole and consideration of the nature of the actual controversy between these parties as shown by the evidence, that this case is not within any recognized exception to the general rule.

The third and fourth assignments of error are based upon the trial judge's refusal to affirm defendant's first point. The effect of affirming this point would have been to instruct the

jury that if they found that the eggs were purchased outright, and that no arrangement was made at the time of the execution of the contract for the return of any of the eggs should they become moldy or unmerchantable, then, even though at the time of the sale the eggs were not sound and fit for household consumption, no promise that the defendant subsequently gave "to help Weiss out of his loss" was binding on the defendant, because such promise was without consideration. If one of the promises intended to be covered by the point was that which the plaintiff testified was made the day after the bargaining for the eggs, it should be considered in connection with his testimony to the effect that he had agreed to take the eggs upon condition, to which the defendant's representative assented, "that they (the cases) have got to be opened, every one of them, and examined before they go into cold storage—they have got to be good," and that defendant put them in cold storage the next morning without giving the opportunity for the examination that was agreed upon. As to the promises alleged to have been made immediately after they were placed in cold storage the plaintiff testified as follows: "I says, 'Mr. Collins, are you ready for these eggs to be examined and opened?' He says, 'They are all in cold storage.' I says, 'Collins, did you examine them, or how did you get them without me?' He says, 'It is none of your business; I will guarantee the eggs; in case you find the eggs to be mouldy, we will take those back. We want to do business with you.' I says, 'All right, Mr. Collins.' " There is a conflict of testimony as to both of these matters. But if the plaintiff's testimony in both particulars be credited, which was for the jury, we think it needs no argument to show that the judge's answer to the point was correct. Assuming, however, that this was not the promise referred to in the point, is it true that no promise that was made subsequently was supported by a consideration? For example, the defendant's salesman, Collins, testified as follows: "About the sixth of December, the middle of December, something like that, he began to take some eggs out, and he brought back two or three cases of moldies at a time, and I told him I could not do anything with them, but I would

sell them and get all I could out of them and try to help him out the very best I could. So he says, 'All right, go ahead; maybe you can get more for them than I can.' I says, 'I don't know whether I can or not, but I will try to help you out what little I can on these under grade eggs'—that is, the dirties." Surely it cannot be claimed that this promise, so far as it related to eggs that were returned to the defendant pursuant to this agreement, did not bind the defendant to "help out" the plaintiff to the extent promised. A very slight consideration, provided it be valuable and free from fraud, will support a contract. It is thus seen, without going further into the evidence, that the point submitted by the defendant was too broad, since it covered any and every promise "to help out" the plaintiff that may have been made after the sale was consummated as stated in the point. It is questionable also whether the point ought not to have been refused because it left out of view the implied contract created by the statute. But we need not consider that question, because even if it be conceded that the defendant's obligation to make good the loss consequent upon a breach of that implied contract would not, of itself, be a sufficient consideration for a new promise to the same effect, the point was objectionable upon the ground above stated.

The assignments of error are overruled and the judgment is affirmed.