Irwin, Appellant, *v.* Hoffman et al.

Argued March 26, 1935.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Robert M. Dale,* with him *Forest B. Irwin,* for appellant.

*John L. Nesbit,* with him *H. Carl Wasson* and *Q. D. Hastings,* for appellees.

OPINION BY MR. JUSTICE MAXEY, May 13, 1935:

This is an action of ejectment to obtain possession of lands containing oil and gas. The land in question was formerly owned by Anna J. Cross, who died January 12, 1902. By her last will and testament she devised it to her daughters, Harriet Cross and Laura B. Cross. The latter on November 8, 1906, granted the premises to E. B. Gordon for a period of fifteen years. In 1911 M. A. Gibson and F. L. Forrester, appellees, each acquired by purchase and assignment a one-fourth interest in the leasehold. In this same year the leasehold was extended to November 8, 1931. In 1912 H. E. Hoffman, appellee, acquired by purchase and assignment a one-half interest in this leasehold. Harriet Cross died testate May 17, 1930, and devised the land subject to the leasehold interests, to her sister, Laura B. Cross. On November 6, 1930, Laura executed and delivered to Clyde L. Irwin, appellant, a certain agreement, the interpretation of which is the subject of the present controversy. She died testate February 9, 1931, and by her last will and testament appointed Charles N. Black executor of her estate and devised the land involved in this proceeding to her sister, Ella Cross Black. On November 5, 1931, i. e., three days before the expiration of the leasehold interest under the extension referred to, the appellees herein instituted a proceeding in the Orphans' Court of Venango County to obtain the specific performance by Charles N. Black and Ella Cross Black, of an alleged agreement purporting to have been executed by the aforesaid Laura B. Cross and Harriet Cross on November 23, 1915. This is the same agreement referred to in our opinion indexed to No. 27, March Term, 1935, and this day handed down.* On the trial of the ejectment proceedings

---

* See preceding case, Hoffman's Appeal.

the jury returned a verdict for the appellant for the land described in the writ. The appellees on December 7, 1934, moved for judgment n. o. v. and for a new trial. On January 14, 1935, the court entered judgment n. o. v. for the defendants below, the appellees herein. Plaintiff appealed.

The question before us involves the construction of the agreement of November 6, 1930. Did it convey to the grantee therein only certain privileges to go on the land for the purpose of prospecting for and producing oil and gas, i. e., did it vest in him merely an incorporeal hereditament, or did it vest in him an estate in the land? The paragraphs to be interpreted are the following:

"Witnesseth: That the said party of the first part for and in consideration of the sum of One Dollar and other good and valuable considerations in hand paid, the receipt whereof is hereby acknowledged, and the further consideration of the covenants and agreements hereinafter mentioned and contained, *does covenant and agree to lease and by these presents has leased and granted unto the said party of the second part, his heirs, executors, administrators and assigns, the exclusive right for the purpose of operating and drilling for petroleum and gas, to lay pipe lines, erect the necessary buildings, release and sub-divide all that certain piece or parcel of land* situate in the Borough of Clintonville, County of Venango and State of Pennsylvania, bounded and described as follows, to wit: [describing it] . . . Containing 110 acres, more or less.

"*To have and to hold the above described premises* unto the said party of the second part, his heirs, executors, administrators and assigns, *for and during the term of 25 years* from the 8th day of November, 1931, *with the right and privilege of renewing said lease for another term of 25 years from the date of the expiration of this lease* [all italics supplied], provided, the said party of the second part, his heirs, executors, administrators and assigns, shall be operating said premises for oil and gas purposes

in the customary manner of operating such property in that vicinity.

"The said party of the second part, his heirs, executors, administrators and assigns, agree to give to the said party of the first part the one-eighth of all the petroleum obtained from the said premises as produced in the crude state, . . . ."

The court below after quoting from the aforesaid agreement, beginning with the word "Witnesseth," and ending with the words "release and sub-divide all that certain piece or parcel of land," etc., said: "An analysis of the above quotation demonstrates that the plaintiff, with respect to the premises described, was granted the following rights under this agreement: (1) to lay pipe lines, (2) to erect the necessary buildings, (3) release and sub-divide. These rights were granted 'for the purpose of operating and drilling for petroleum and gas.'" After reviewing Pennsylvania cases the court further said: "Where the land itself or the possession thereof is granted for a term of years upon certain terms and conditions an estate or interest in land is created which will sustain an action of ejectment. Where only a right is granted, even for a term of years, and no possession given or obtained, the grantee or lessee has only a license and cannot bring ejectment." The court decided: "The plaintiff obtained from Laura B. Cross only a right or license to exercise certain privileges upon her property and these privileges do not constitute an estate in the land itself, and, therefore, an action in ejectment will not lie."

Appellant interprets the aforesaid agreement as follows: "We find these words operating, after an interposition of the purposes of the lease, on the following, to wit:

"(1) 'The exclusive right . . . to . . . lay pipe lines.'

"(2) 'The exclusive right . . . to . . . erect the necessary buildings.'

12

"(3) 'The exclusive right . . . to . . . re-lease and sub-divide.'

"(4) 'The exclusive right . . . to . . . all that certain piece or parcel of land situate in the Borough of Clintonville, County of Venango and State of Pennsylvania.'

"And the purpose, interposed between the granting terms and the subject, is as follows:

"'. . . for the purpose of operating and drilling for petroleum and gas.'"

Appellant cites Duke et al. v. Hague, 107 Pa. 57. That case was an action of ejectment. The agreement there contained the following granting clause: "Have granted, demised and let unto the said party of the second part, his executors, administrators and assigns, the exclusive right for the sole and only purpose of mining and excavating for petroleum, rock or carbon oil. To have and to hold the said premises exclusively for the said purpose only, unto the said party of the second part, his executors, administrators, or assigns for and during the full term of 20 years." In that case this court said: "The purpose of the lease is first named, but that the land is leased for that purpose is as plain as if the description of the land preceded the clause restricting its use. . . . His [i. e., the lessee's] interest is that of a tenant for years for the purpose of mining; he has an absolute right of possession of all the surface necessary, and no one else can rightfully take out oil during the term, save under him." It was held that this vested in the lessee an estate for years, and not a mere license on the land demised, and that such lessee was entitled to notice of a partition by the owners of the fee. The court below in the instant case said of the Duke Case: "While the court in disposing of the question raised in Duke v. Hague does not comment upon the fact that the defendant therein had entered into possession of the premises described in the lease and had complied with the terms thereof, yet in our mind this factor has a large and con-

trolling effect in determining what right or interest Hague obtained under the terms of his lease." We do not accept this distinction as vital and we view the case of Duke v. Hague as authority in the present controversy.

The court below cites the case of Kelly v. Keys, 213 Pa. 295, 62 A. 911, and says: "The terms of the lease in [that] case and the situation of the parties is practically identical with the instant case." In that case the instrument in question provided as follows: ". . . The party of the first part . . . has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said parties of the second part, their successors or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, stations and structures thereon to take care of said products," followed by a description of certain premises. There it was held that the grant was only of an incorporeal hereditament. It must be conceded that there is a strong similarity of language between the granting paragraph in the Kelly Case and the one in the instant case. However, there is a slight difference in the respective granting clauses and a substantial difference in the entire respective agreements when the habendum clause in the agreement under review is considered, and these differences are sufficient to distinguish the Kelly Case from the one at bar. Were it not for the absence of a comma after the phrase "release and sub-divide," the grant now in controversy would incontestably be a *grant of all the land described therein,* to be used for the purposes stated. This leads to a consideration of what significance is to be placed on the absence of a comma at the point referred to. In Abbott's Est., 198 Pa. 493, 48 A. 435, where it was argued that the absence of a comma at a certain point was significant, this court refused so to hold, saying: "Punctuation is an uncertain aid in the interpretation of written instruments, and is to be resorted to only when other means fail." In that case no comma

14

had been placed after the word "lien" and before the word "operation," and it was contended that "lien" was an adjective and not a noun and this court held: "The word 'lien' is ordinarily used as a noun, and its use as an adjective is unusual," and therefore was to be given its ordinary meaning. When one reads the granting clause in the agreement now in question, it is difficult to escape the conclusion that the omission of a comma before the words "all that certain piece or parcel of land," was not an inadvertence. Ordinarily it would have been placed there and the words just quoted would not serve as the exclusive objects of the verbs "release and sub-divide" but would serve equally as the objects of the verbs "leased and granted." We think this was the intention of the grantor. In Gyger's Est., 65 Pa. 311, this court held that in construing a statute the plain common sense interpretation of the words should be adhered to, rather than to apply refined technical rules of grammar. In White v. Smith et al., 33 Pa. 186, this court said, in an opinion by Mr. Justice Thompson: "I think no case can be found, upon which the sense of a contract has depended upon the absence of punctuation marks—words are the most usual evidence of intent, and formed into sentences are to be taken to express the meaning of the party using them." 25 R. C. L., page 965, section 220, lays down this principle: "It seems to be well settled that punctuation is a fallible standard of the meaning of a statute, and the last resort as an aid in its interpretation, though it may be resorted to as such aid when the meaning of the statute is doubtful [citing Joy v. St. Louis, 138 U. S. 1; Greenough v. Phœnix Ins. Co., 206 Mass. 247, 92 N. E. 447, 138 A. S. R. 383]. In the interpretation of statutes the true meaning of the lawmaker must be ascertained from the whole purview, and when that is manifest from a judicial inspection the court will not permit punctuation to control, but will disregard the punctuation of a statute or repunctuate, if need be, to give effect to what otherwise appears to be its purpose and true meaning."

If a comma had been placed after the phrase "release and sub-divide" there could be no doubt that the grantor had leased to the party of the second part all the land in question for the purposes indicated. We believe she did and that the language should be so construed against her. In Collison v. Phila. Co., 233 Pa. 350, 82 A. 474, this court cited with approval the following from 17 Am. & Eng. Ency. of Law (2d ed.), 14: "The words of a document will, in cases of doubt, be construed most strongly against the party using them, or, as it is sometimes expressed, fortius contra proferentem. This principle has frequently been applied in the case of deeds, including those by way of lease or by way of mortgage." 8 R. C. L., page 1088, section 145, is in accord: "Where the description in a deed is not inherently inconsistent, it is the prima facie expression of the will of the grantor. Therefore the rule of construction that where there is a doubt as to the construction of a deed, it shall be taken most favorably for the grantee is applied," citing Boone v. Clark, 129 Ill. 466, 21 N. E. 850. In 18 C. J., page 263, section 219, is found the following: "In case of ambiguity in a deed, or where it admits of two constructions, it will, according to the great weight of authority, be construed most strongly against the grantor, or most favorably to the grantee."

It is also well settled that when the terms of a grant are ambiguous, reference may be had to the "habendum" clause. 18 C. J., page 330, section 327: "In determining the estate created by a deed, the court will, under the modern rules of construction now generally adopted, consider the deed as a whole, without regard to its formal division into parts. . . ." See also 18 C. J., page 331, section 329. In Wager v. Wager, 1 S. & R. 374, this court said, in an opinion by Mr. Chief Justice TILGHMAN: "The habendum, says Blackstone, may lessen, enlarge, explain or qualify the premises, but not totally contradict them." See Bedford Lodge v. Lentz et al., 194 Pa. 399, 45 A. 378, and Nicholson's "Pennsylvania Law of Real Estate"

(1924 ed.) at page 226. In the instant case the "haben-dum" clause is important in the determination of the intention of the parties. It declares that the grantee was "to have and to hold the above described premises." The popular and ordinary acceptation of the word "premises" is land with its appurtenances. "The word 'premises,' as applied to realty, means 'lands and tenements' ": Hilton's App., 116 Pa. 351, 358, 9 A. 342. See also New Jersey Zinc Co. v. N. J. Franklinite Co., 13 N. J. Eq. (2 Beasl.) 322, 344.

In Berridge and Wife v. Glassey, 112 Pa. 442, 455, 3 A. 583, this court said: "The intention of the parties is to be ascertained from the entire instrument. . . ." Viewing the instrument in its entirety, we conclude that it was the intention of the grantor therein "to lease and grant . . . all that certain piece or parcel of land" described in the agreement of November 6, 1930, and not to convey to the grantee a mere incorporeal hereditament. In Barnsdall v. Bradford Gas Co., 225 Pa. 338, 74 A. 207, which was an action in ejectment, the agreement then in question "granted, demised, leased and let . . . unto the party of the second part, . . . for the sole and only purpose of mining and operating for oil, gas and other minerals and of laying pipe lines and of building tanks, stations and structures thereon to take care of the said products, all that certain tract of land . . . containing one hundred acres, more or less . . . ," for the term of ten years. In that case the jury returned a verdict for the plaintiff and the trial court entered judgment n. o. v. for defendant. This court reversed the court below and directed that judgment be entered on the verdict. What was said by this court in the opinion in that case, is equally applicable here: "The contract gives him [the grantee] the right to the oil and to the possession of the land to enable him to remove it. As [we] said in Duke v. Hague, 107 Pa. 57, the whole of the oil, or only a part, may be taken under the lease, but whatever shall be taken is of the substance of the realty. Having acquired by the

contract a right to a part of the realty, the law should give the lessee an adequate remedy to enforce that right. Ejectment is the proper action for the recovery of possession of land in this State. It is a possessory action, and if a party has a right to possession and the immediate right to enter, he may maintain ejectment. Here the lessee has the right to the possession of the premises, the immediate right to enter, and the right to take the oil therefrom which is a part of the realty."

The judgment is reversed and is herein entered for the plaintiff on the verdict.