**Donald M. BILLIG, Appellant**

v.

**Joel D. SKVARLA and Marianne Skvarla, Husband and Wife Appellees.**

Superior Court of Pennsylvania.

Argued March 17, 2004.
Filed June 21, 2004.

Gary N. Altman, Uniontown, for appellant.

Robert L. Webster, Uniontown, for appellee.

Before: KLEIN, BENDER and JOHNSON, JJ.

BENDER, J.

¶ 1 This is an appeal from a judgment entered in favor of Appellees in an ejectment action. Appellant raises two issues for our resolution: (1) does Appellant as owner of the property in question have standing to file an action in ejectment, and (2) did the trial court commit fatal procedural errors? We vacate and remand.

¶ 2 The present dispute relates to a twenty-foot private road that runs through a parcel of land situated in Fayette County once owned by J.G. Sisler II (Original Grantor) and his wife, Mary Francis Sisler. The Sislers acquired the larger parcel (Original Plot) by deed from Mark S. Lambie in June of 1947 and, according to Appellant's complaint below, the Sislers later subdivided the property into seven separate lots. Currently, Appellant owns three contiguous lots of the original seven lots

and Appellees own two of the original seven lots.

¶ 3 Appellant acquired his first lot, upon which a house is situated, from J.G. Sisler III and his wife, Betty R. Sisler. J.G. Sisler III is the son of Original Grantor.[1] Appellant acquired a subsequent lot, which abutted a back portion of his original lot, by deed from Donald M. Miller II, son of Donald M. Miller, and his wife, Rush P. Miller, on July 9, 1999. The third "lot" is the private roadway. Appellant acquired title to this property by taking three deeds purporting to convey the land upon which the private road lies but also conveying the remainder of the land of Original Grantor not previously conveyed. The three deeds were executed on September 5, 2000, October 6, 2000 and November 9, 2000.

¶ 4 Appellees acquired their first lot on February 5, 1980, from Mary Jane Wilson, the daughter of Original Grantor, who was also the mother of Appellee Marianne Skvarla. A house is located on this lot. Appellees acquired a second lot from Donald M. Miller II and Rush P. Miller on May 7, 1999. Although this lot is larger than Appellees' original lot, it is "vacant" and is situated across the private road from their house lot.

¶ 5 The Original Plot of land had frontage on State Road (SR) 2019. It is unclear whether the private road existed prior to the subdivision of the land, although there are assertions to that effect in the transcripts,[2] however, it is clear that the road was established, at least of record, to provide access to the back portions of the property that have been subdivided as otherwise those lots would be "landlocked."

Appellant's original lots are two of the lots that have no frontage on SR 2019, however, both of Appellees' lots have frontage on that roadway.

¶ 6 The private road was first established "of record" by a deed between the Sislers and Sherman and Hilda Collier executed in May of 1959. The relevant language of the deed creating the roadway and attendant right-of-way/easement is:

Grantors hereby grant to Grantees the right to use, in common with Grantors and any subsequent owners of the lands presently owned by them, acquired from Lambie and Shanaberger, or additional lands which may be acquired, a roadway 20 feet in width, the center line of which is more particularly bounded and described as follows: [a metes and bounds description of the roadway follows]. The lands hereby conveyed are under and subject to said roadway as mentioned, crossing the Eastern end thereof, and the use thereof by Grantors and their heirs and assigns, for the use of the lands presently owned by them, or other lands to be acquired by them, and Grantees hereby covenant, promise and agree to pay, [sic] for the upkeep and maintenance of said road, a proportion of the cost thereof, determined by a fraction of which the numerator shall be the acreage hereby conveyed to them, and the denominator the total of the acreage owned by the said J.G. Sisler and Mary Francis Sisler, his wife, their heirs and assigns.

Subsequent deeds dividing the original parcel have, for the most part, both used the private road as a border while granting

---

**1.** According to the deeds conveying the remaining property of Original Grantor, the Original Grantor is referred to as J.G. Sisler II. It appears in the earlier deeds, J.G. Sisler II went by just J.G. Sisler and not J.G. Sisler II. These deeds indicate that Mary Francis Sisler died February 24, 1960, leaving J.G. Sisler II as the surviving tenant by the entireties.

**2.** Counsel for Appellees asserted that the private road had been on the property for "fifty years" during argument on the motion for nonsuit. N.T. Trial, 3/18/2003, at 7.

a right of way over the road. For instance, in a deed conveying a lot to Donald M. Miller, Sr., of Uniontown, Pennsylvania, the deed reads, in relevant parts:

> BEGINNING at a point on the western line of said right of way at the corner of land now or formerly of McElroy, formerly Shanaberger; thence by land North 84 00′ West 149.00 feet to a point on the eastern side of an **unpaved private lane or right of way**; thence along said eastern side of said lane North 21 32′ 45″. . . .
>
> Grantor hereby grants to the grantee the right to use in common with the grantor, his heirs, executors, administrators or assigns, the private lane or right of way as shown on said print.

(Emphasis added.)

¶ 7 The deed from J.G. Sisler to Mary Jane Wilson, the mother of Appellee, Marianne Skvarla, and subsequent grantor of Appellees' home lot, refers to the private road reading in pertinent part:

> BEGINNING at the northeast corner of a larger tract of land conveyed by Mark S. Lambie, et ux, to J.G. Sisler, grantor herein, and wife, . . . thence by said road, S. 3½ E. 10 feet to a **20 foot wide lane** . . ., thence by the Northerly side of said lane, S. 58 W. 147 feet, . . . .

Similar to the deed from J.G. Sisler to Donald Miller, the predecessor deed to Appellees' house lot purports to convey to the edge of the private roadway. In notable contrast, the deed from J.G. Sisler to J.G. Sisler III and Betty R. Sisler, the subsequent grantors of Appellant's first purchased lot, referred to by Appellant as the "Mountain Home," reads in relevant part as follows:

> BEGINNING at the northern most corner of the tact of land conveyed by the above grantor to Donald M. Miller, II, . . . thence still by same South 71 55′

10″ East 65.12 feet to a point **in the 20 foot roadway**; thence **in said roadway** South 8 00′ 33″ West. . . .

The same language is repeated in the deed from J.G. Sisler III and Betty R. Sisler to Appellant. Thus, in contrast to the deeds from Original Grantor to Mary Jane Wilson, which deeded to the edge of the private road, the deed which conveyed Appellant's original lot purports to grant to a point somewhere in the roadway.[3] Although it is not immediately clear from the description in the deed, presumably the deed conveys to the center of the private road.

¶ 8 The deed from Original Grantor to J.G. Sisler III and Betty Sisler further provides a provision granting the use of the private road. It states "[t]he grantor further gives and grants to the grantee the right to use the 20 foot roadway . . . ." This clause is repeated in the deed from J.G. Sisler III and Betty Sisler to Appellant. In contrast, the deed from Original Grantor to Mary Jane Wilson contains a clause that suggests an intention to grant a right of way in the private road, but which does not explicitly do so. This clause reads:

> TOGETHER with the right to use in common with Grantor and others to who he has or may convey parcels from the larger tract owned by him and/or his heirs, subject to the terms and conditions set forth in his deed to Sherman T. Collier, et ux, dated May 23, 1959, recorded in the Recorder's Office of said Fayette County in Deed Book 912, page 830.

When the clause is read closely, the single-sentence clause appears to be missing a subject that would naturally be included immediately after the language "and/or his heirs." The following phrase, "subject to the terms and conditions," seemingly re-

---

3. Appellant's counsel contends the point is the center of the private road.

fers to the missing subject of the sentence and the reference to the deed conveying property to Sherman T. Collier, the first deed of subdividing J.G. Sisler's original plot of land is notable in that, as mentioned earlier, that deed created the private road and referenced its intent that it would be shared with the grantor and subsequent grantees of any subdivisions of the lot. We note that the copy of the deed marked Defendants' Exhibit I contains a handwritten "x" in the spot mentioned above and the notation "a roadway" on the side.

¶ 9 Since Appellant purchased his original lot, he has had intermittent disputes with Appellees over usage of the private road. Appellant asserts that Appellees have blocked the private road with their vehicles and have conducted activities that has caused other vehicles to be parked on the roadway and/or in his driveway. Appellant further alleges that Appellees have erected a fence on a portion of the private road. Appellant alleges that numerous steps have been taken over the years to settle the dispute over the private road in an amicable manner, however, to no avail. Consequently, on January 22, 2002, Appellant filed a complaint in ejectment. A non-jury trial commenced on the morning of November 12, 2002, during which Appellant presented testimonial evidence as well as some exhibits. Upon returning from a lunch break, counsel for both parties indicated that a tentative settlement to some of the issues had been reached. The settlement required that certain boundaries would be determined by survey. The proceedings were then continued until March 18, 2003, at which time Appellees moved for a nonsuit. The court took the matter under advisement after which Appellees put in evidence. On May 12, 2003, the court granted Appellees' motion for nonsuit. Appellant filed a timely post-trial motion to remove the nonsuit which was subsequently denied on June 4, 2004. The present appeal was initiated by the filing of a notice of appeal on June 9, 2003.

¶ 10 Because it appears to be a recurring problem, we take this opportunity to address what constitutes the "final order" from which an appeal properly lies where a nonsuit has been granted. The present appeal was initiated by the filing of a notice of appeal on June 9, 2003. That notice of appeal identified the appeal as from the order dismissing Appellant's motion for post-trial relief and affirming the nonsuit order of May 12, 2003. However, judgment was not entered until July 10, 2003, and was entered by praecipe of Appellant's counsel only after receipt of a letter from this Court's Central Legal Staff (CLS) directing counsel to cause judgment to be entered upon the docket for purposes of perfecting the present, premature, appeal. In a response to that letter, Appellant's counsel, Gary N. Altman, Esquire, indicated that he had been unsure of the proper approach to taking an appeal in the present case, in part, because he believed that under *Miller v. Hurst*, 302 Pa.Super. 235, 448 A.2d 614 (1982) (*en banc*), he "assumed nothing more needed to be done." Letter from Gary N. Altman, Esquire, to CLS, 7/11/03.

¶ 11 Counsel's perception of the proper approach to appeal in the present context is understandable. As counsel correctly observed, previously, an order refusing to remove a nonsuit was deemed a "final" and immediately appealable order and it was not deemed necessary that judgment be entered prior to taking an appeal. In fact, in the aforesaid *Miller*, we discussed this issue while recognizing that an appeal properly lay from an order refusing to remove a nonsuit and not from the initial entry of a nonsuit. In concluding that it was unnecessary for judgment to be entered, we noted that:

An order refusing to remove a compulsory nonsuit, contrary to an order refusing to award a new trial, is a final, *judicial determination* that as a matter of law the plaintiff has no cause of action on which recovery can be had. In this respect it is comparable to an order sustaining preliminary objections in the nature of a demurrer to a complaint and dismissing the complaint without leave to amend.

*Id.* at 616. However, more recently, in the same procedural context we stated:

Ms. Rachlin purportedly appeals from the December 14, 2000, order denying her post-trial motion. "An order denying post-trial motions is not appealable until the order is reduced to judgment." *Parker v. Freilich,* 2002 PA Super 188, 803 A.2d 738, 741 n. 2 (Pa.Super.2002). The appeal in this case properly lies from the judgment entered on December 14, 2000, rather than the order entered on that same date.

*Rachlin v. Edmison,* 813 A.2d 862, 864 n. 1 (Pa.Super.2002) (*en banc*). The statement above appears upon its face to be at odds with our holding twenty years earlier in *Miller* and, since the above statement was made without any discussion or distinguishing of *Miller,* one might perceive that there is a conflict in the law and that the *Rachlin* court ignored principles of *stare decisis* in issuing the above statement. In reality, the reason for the departure is grounded much more upon changes to certain relevant rules of civil procedure, since we rendered the decision in *Miller,* than in a simple change of philosophy or disobedience to principles of *stare decisis.* Notable among the changes was the elimination of the principle of law that might be termed "practical finality."

¶ 12 In 1992, Pa.R.A.P. 341 was revised so as to generally eliminate:

appeals as of right from orders not ending the litigation as to all claims and as to all parties. Formerly, there was case law [holding] that orders not ending the litigation as to all claims and all parties are final orders if such orders have the practical consequence of putting a litigant out of court.

Note, Pa.R.A.P. 341. As the Note suggests, previously there were circumstances when an appeal was recognized even though it did not end the litigation as to "all claims and all parties." The revision of Rule 341 in 1992 ended this practice and requires, generally speaking, a formal end to the litigation prior to taking an appeal. For the most part, the litigation does not come to a formal close until judgment is entered in favor of the prevailing party.[4] As such, this principle would suggest a necessity for entering judgment on the record prior to the taking of an appeal.

¶ 13 However, perhaps just as important to the present question has been a movement to create a uniform post-trial practice in actions at both equity and law. In the recently decided *Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491 (2002), our Supreme Court stated:

In 1984, this Court rescinded Rules 1518 and 1519 of the Rules of Civil Procedure, which governed the procedures for post-trial relief in an equity action, and adopted Rules 227.1 through 227.4 to establish uniform procedures for post-trial relief in actions at law and equity, and actions tried with or without a jury. See Pa.R.C.P. 227.1 cmt. (1983).

*Id.* at 494 (footnote omitted).

¶ 14 In case the Court failed to make the above point emphatically enough, the

---

4. "Pendency of an action ends with the entry of judgment." *McMonagle v. Allstate Ins. Co.,* 227 Pa.Super. 205, 324 A.2d 414, 419 (1974).

statement was reiterated later in the decision when the Court stated:

> In rescinding Rule 1518 and replacing it with Rule 227.1, however, this Court intended to abolish that equity-specific practice and establish a standard post-trial practice, which applies to both actions at law and actions in equity

*Id.* at 496.

¶ 15 Pursuant to the amendment to the rules:

> Under Rule 227.1, a party must file post-trial motions at the conclusion of a trial in *any* type of action in order to preserve claims that the party wishes to raise on appeal. In other words, a trial court's order at the conclusion of a trial, whether the action is one at law or in equity, simply cannot become final for purposes of filing an appeal until the court decides any timely post-trial motions. See Pa.R.C.P. 227.1(a).

*Id.* at 496.

■ ¶ 16 As *Miller* so aptly demonstrates, where a nonsuit has been entered the case is not ripe for appeal until after a motion to remove the nonsuit has been presented to the court and denied. Of course, although predating the amendment to the rules, this practice has been continued by the Rule 227.1 mandate that post-trial motions be filed after a trial, as the just quoted passage attests. Lest there be any doubt how to characterize a motion for removal of a nonsuit, Pa.R.C.P. 227.1 identifies the removal of a nonsuit as relief that can be granted upon the filing of a post-trial motion and also indicates that post-trial motions must be filed within ten days of entry of a nonsuit. As such, a motion to remove nonsuit must be regarded as a "post-trial motion" under the rules of civil procedure, thus placing a case that ended with entry of a nonsuit in the same procedural context as one that ended by verdict, *i.e.*, one requiring the filing of a post-trial motion. Turning back to the question of

from what does the appeal properly lie, reference to another of our Supreme Court's cases should answer this question rather clearly:

> Under our Appellate Rules, an appeal in a civil case in which post-trial motions are filed lies from the entry of judgment. See Pa.R.A.P. 301(a), (c), (d), note; *O'Donnell v. Bachelor,* 425 Pa. 626, 627, 229 A.2d 755 (1967); *Johnston the Florist, Inc. v. TEDCO Constr. Corp.,* 441 Pa.Super. 281, 286, 657 A.2d 511, 514 (1995) (*en banc*) (emphasizing that entry of judgment is a prerequisite to appellate jurisdiction).

*K.H. and D.A.H. v. J.R. and N.R.,* 573 Pa. 481, 826 A.2d 863, 871 (2003). Thus, it appears clear that, as we stated in *Rachlin,* in a case where nonsuit was entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit.

■ ¶ 17 Turning to the propriety of granting of a nonsuit in the present case, our standard of review in determining the propriety of the entry of a non-suit is well settled:

> [Entry] is proper only if the factfinder, viewing all the evidence in favor of the plaintiff, could not reasonably conclude that the essential elements of a cause of action have been established. When a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement. A compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established and the plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence, resolving any conflict in the evidence in favor of the plaintiff. The fact-finder, however, cannot be permit-

ted to reach a decision on the basis of speculation or conjecture.

*Joyce v. Boulevard Therapy & Rehab. Ctr., P.C.,* 694 A.2d 648, 652–653 (Pa.Super.1997).

¶ 18 In granting Appellees' motion for non-suit, the court concluded that non-suit was proper since Appellant had failed to establish a "clear right to possession." Trial Court Opinion (T.C.O.) 5/12/03, at 2. This was error.

¶ 19 In the first instance, the trial court analyzed Appellant's claim of title to the private road as being derived from his deed to the "house lot." The court states, "plaintiff's argument that he owns the land under the twenty-foot right of way is not accurate. As stated in McAndrews, grantee does not take title in fee to the center but by implication acquires an easement over the lands." T.C.O. at 3. Ironically, since Appellant's lot seems to be the only one which purports to convey to a point in the roadway, Appellant possesses a colorable claim to fee title to some portion of the roadway not enjoyed by the other grantees. Nevertheless, the court overlooked the fact that Appellant received executed deeds from the three heirs of the Original Grantor purporting to transfer title of the land under the private road to Appellant. As such, Appellant holds deeds purporting to convey the land upon which the private road lies.

¶ 20 Moreover, if the trial court's thesis that all of the grantees of the original plot of land took only to the edge of the private road is correct, it follows that the fee title to the land the private road was situated upon remained in the Original Grantor and passed to his heirs when he died intestate.[5] As such, those heirs were in position to transfer the title to the land upon which

the private road lies. Even if the deed inaccurately described the precise metes and bounds of the private road, the deeds conveyed "all of the real property still owned" by the grantor in the Original Plot. By the trial court's analysis, the fee title to the private road necessarily remained with the Original Grantor. Consequently, at the very least, Appellant has a colorable claim of title to fee ownership of the land upon which the private road is situated, although that land remains subject to the easements that ran with the land.

¶ 21 The question raised by the above conclusion is whether Appellant has a sufficient possessory interest to maintain an action in ejectment. In concluding to the contrary, the court quoted from our decision in *Doman v. Brogan,* 405 Pa.Super. 254, 592 A.2d 104, 108 (1991), where we stated "the plaintiffs' burden in an action in ejectment at law is clear: they must establish the right to immediate exclusive possession." Although the court accurately quotes the language of *Doman,* it appears that the quote goes somewhat further than accepted law. Recently, our Supreme Court recited the essence of an action in ejectment:

> Ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession. *Soffer v. Beech,* 487 Pa. 255, 409 A.2d 337 (Pa.1979);
>
> · · ·
>
> "The purpose of an ejectment action as opposed to quiet title is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between plaintiff and defendant involved in that particular

---

**5.** The three deeds conveying the remainder of J.G. Sisler II's interest in the property indicate that Original Grantor died intestate November 19, 1979, in Huntsville, Alabama, leaving three children to survive him, Joseph Grant Sisler III, Sylvia Doris S. White and Betty S. Shumar.

litigation." *Burnett v. Mueller,* 48 Pa. D. & C.2d 165, 171–172 (1969); 22 Standard Pennsylvania Practice 2d § 120:2. *Siskos v. Britz,* 567 Pa. 689, 790 A.2d 1000, 1006 (2002). In neither of these recitations of the requisites, or nature, of an ejectment action does the Court state that the plaintiff must be entitled to exclusive possession of the property.

¶ 22 Consistent with this position, our Supreme Court, some time ago, seemed to conclude that the fact that the land in dispute might have been subject to an easement did not deprive the plaintiff from prevailing in an ejectment action. In *Vlachos v. Witherow,* 383 Pa. 174, 118 A.2d 174, 179 (1955), our Supreme Court affirmed on the basis of the trial court's opinion, which stated in relevant part:

> Since the only issue in an ejectment action is the right of possession arising from title or ownership, this court is not concerned at this time with the question of easement or of the right of defendants to the use of either the land in dispute or any of the buildings erected on that portion of the land. Should that right of use or the easement claimed by defendants be interfered with by plaintiffs, defendants have a legal remedy to protect their rights thereto. All that we can be concerned with in this action, as stated above, is the right of possession.

■ ¶ 23 It is also helpful to understand both the origin and the evolution of the action of ejectment:

> The legal action of ejectment began not as a real property action, but as an action in trespass. *Seitzinger v. Ridgway,* 9 Watts 496 (1840). Ejectment originally rested on a claim of actual or constructive ouster of the plaintiff. 13 Stnd.Pa.Prac. Ch. 67, § 1 (1957). Entry by the lessee and subsequent ouster by the defendant were essential to the claim of trespass.

> The writ of ejectment, however, has changed dramatically in the centuries since its narrow origin. Today, the right to possession is the central element of the action—not the claim of ouster. The writ of ejectment has long been the general method for obtaining possession of real property. *Dice v. Reese,* 342 Pa. 379, 384–86, 21 A.2d 89, 92–93 (1941); *Irwin v. Hoffman,* 319 Pa. 8, 16–17, 179 A. 41, 45 (1935). The writ has expanded from a tenant's remedy and has long since been available to fee claimants and all others who assert the right to possession of estates in real property. See *Gilberton Coal Co. v. Schuster,* 403 Pa. 226, 228, 169 A.2d 44, 45 (1961). Yet it has never been suggested that a fee claimant need allege entry and ouster in order to succeed in ejectment. Rather, our cases involving fee claimants speak only of the right to possession by one not presently in possession.

*Soffer v. Beech,* 487 Pa. 255, 409 A.2d 337, 340 (1979) (footnote omitted). Recent cases have seemed to continue the evolution of the ejectment action by recognizing a right to sue for ejectment where the possessory interest was merely an easement. *Croyle v. Dellape,* 832 A.2d 466 (Pa.Super.2003); *Williamstown Borough Authority v. Cooper,* 404 Pa.Super. 516, 591 A.2d 711 (1991). Clearly, if one possesses only an easement in the property but can maintain an ejectment action, the plaintiff cannot be said to have shown a right to exclusive possession of the realty. Moreover, *Doman* itself states:

> The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence, *see Hallman,* 334 Pa.Super. at 190, 482 A.2d at 1288 (citing *Rook v. Greenewald,* 22 Pa.Super. 641, 643 (1903)), the boundaries of a parcel of land to which they are out of possession

but for which they maintain paramount title.

*Doman,* 592 A.2d at 108. Similar to passages quoted above, this characterization of an ejectment action does not require exclusive possession, but rather, just a paramount title to land to which the plaintiff(s) is/are out of possession.

■ ¶ 24 To the extent Appellant has title to the roadway, he would have a right to "possession" of the roadway, even though it is subject to the right of way granted to the other landowners in the Original Plot. Based upon the above authorities, we believe this is a sufficient possessory interest to allow an action in ejectment.

■ ¶ 25 Next we must discuss the various allegations of dispossession or interference with the easement Appellant has averred in his complaint. Appellant complains that Appellees have placed a decorative split rail fence within the boundaries of the private road. Appellant Complaint at ¶ 12. Appellant further alleges that from time to time, Appellees have blocked a portion of the private road by parking vehicles on the road. *Id.* With respect to the allegations of erecting a fence on the private road, if true, this would constitute an encroachment onto the private road and an act of dispossessing the other tenants entitled to use the private road, including Appellant, and to Appellant to the extent he held the fee title to the land upon which the private road lies. We faced a similar situation in *Croyle* and found that such an encroachment could be remedied via an action in ejectment. However, we also noted that relief could have been sought in equity by way of an injunction enjoining the action. Similarly, in *Williamstown Borough,* we commented that Williamstown Borough Authority could sue in eject-

ment when a house was built on land the Authority either owned in fee or held a right of way over. The difference in the Authority's title was considered immaterial. *Williamstown Borough,* 591 A.2d at 714 n. 4.

■ ¶ 26 With respect to Appellees allegedly parking their vehicles in the roadway, such an act appears to be a transitory act of trespass and not a true dispossession of Appellant from his property or from the right of way. In this instance, it is difficult to see how an action in ejectment can supply a proper remedy. Based upon the "Conclusion" in Appellant's Brief, Appellant does not appear to dispute Appellees' right to use the right of way.[6] As such, in this case, the more appropriate remedy would appear to be an injunction enjoining Appellees from impeding ingress and egress along the private road, which would provide additional remedies to Appellant should the injunction be violated. However, an injunction is an equitable remedy and Appellant filed an action in ejectment, which is an action at law. *Croyle, supra.*

¶ 27 Given the above conclusions, we conclude that the court erred in granting a nonsuit. Appellant produced sufficient evidence to establish a *prima facie* possessory interest, both in a right of way over the private road and possibly a fee title to the land upon which the private road is situated, to maintain an action in ejectment. Appellant further provided sufficient evidence from which it could be concluded that his right of possession had been encroached upon or interfered. Since it is not the function of this Court to find facts, and since by virtue of the entry of nonsuit, no material issues were factually decided, we believe the appropriate remedy at this juncture is to vacate the judgment and

---

**6.** This constitutes a departure from the relief sought in the complaint in which Appellant sought a declaration that Appellees had no interest in or right to use the private road. Complaint, concluding paragraph.

remand for additional proceedings consistent with this Opinion.

¶ 28 Judgment vacated, remanded for additional proceedings. Jurisdiction relinquished.