J-S31045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DIANNE M. CAMPANELLA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER MERTZ | : | No. 3256 EDA 2024 |

Appeal from the Judgment Entered January 13, 2025
In the Court of Common Pleas of Pike County Civil Division at No(s):
758-2015-Civil

BEFORE:  PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 26, 2026**

Appellant Dianne M. Campanella appeals the dismissal of her complaint in ejectment and trespass against Appellee Peter Mertz, after Appellee installed improvements on property to which both parties claim title. Appellant claims that the trial court misinterpreted evidence and, further, made conclusions not supported by the evidence.  We affirm.

The trial court summarized the filings and evidence presented at a non-jury trial as follows:

On May 29, 2015, Appellant . . . filed [a] complaint against Appellee . . . alleg[ing that Appellee] entered upon her real property in or about 2009 and proceeded to make various improvements thereon.  Despite requests by [Appellant], [Appellee] refused to remove the improvements from the disputed property.  [Appellant's] complaint set forth separate causes of action for ejectment and trespass.

[Appellee] filed an answer . . . with new matter on December 23, 2015.  In his answer, [Appellee] denied [Appellant's] claim of title to the property in dispute [and] alleged that he owns the subject

disputed property, has rights thereto through adverse possession[,] and generally asserted various other affirmative defenses[,] including waiver, estoppel, unclean hands[,] and statute of limitations.

[Appellant] owns real estate [(Campanella property)] located in Westfall Township, Pike County, Pennsylvania[,] by virtue of a deed dated October 2, 2012 from Catherine Davis a/k/a Catherine H. Davis to [Appellant] as recorded in the office of the Pike County Recorder of Deeds on January 16, 2013 [(2012 Campanella deed). Appellee] owns real estate located in Westfall Township, Pike County, Pennsylvania[,] by virtue of a deed dated October 12, 1999 from Rose M. Kloepfer, widow[,] to [Appellee] and Anne Olshansky as recorded in the Office of the Pike County Recorder of Deeds on October 13, 1999 [(Mertz property).]

The Campanella and Mertz properties are both located in the village of Millrift[,] which is located along the Delaware River in Westfall Township, Pike County.  Both properties originate from a common parcel of land previously owned by Wilber W. Sawyer.  The Sawyer deed dates back to January 24, 1910 and is recorded in the Office of the Pike County Recorder of Deeds [(1910 Sawyer deed).  V]arious transfers and conveyances of the [Sawyer] common parcel led to the current ownership of the Campanella and Mertz properties.  ***See*** [Exs. P-1 and P-2] (Abstracts of Title).

\* \* \*

Mr. Ewald[, a licensed land surveyor,] prepared and identified abstracts of title of the Campanella and Mertz properties.  [***See*** Exs. P-1 and P-2.]  Mr. Ewald also prepared a survey land map of the various properties involved in this action.  [***See*** Ex. P-3.]

Mr. Ewald opined that the Campanella and Mertz properties share a common parent parcel containing dimensions of 250 feet by 106 feet as described in the [1910 Sawyer deed].  Mr. Ewald testified that various parcels were subsequently conveyed out of that original parcel including lands of Geise (56 feet by 106 feet), Hart (50 feet by 106 feet), [the] Mertz [property] (118 feet less 45 feet by 106 feet)[,] and [the Campanella property] (45 feet by 106 feet).  Based on his review of the deed records and his on site survey work, [Mr.] Ewald concluded that the Mertz property actually contained 73 feet of railroad and river frontage and that the [Campanella] property actually includes the disputed land in

question, i.e., a 26 foot strip of land on which [Appellee] erected his improvements.

[Appellee] offered the expert testimony of [Mr.] Williams . . . a licensed land surveyor. . . [who] agreed that the Campanella and Mertz properties share the common parent parcel as set forth in the [1910 Sawyer deed]. Mr. Williams also acknowledged the various conveyances out of the [Sawyer] parent parcel as noted by Mr. Ewald. Mr. Williams disagreed, however, with Mr. Ewald as to the exact location of the [Campanella] property, the dimensions of the Mertz property[,] and thus the ownership of the 26 foot strip of land in question.

Mr. Williams relied on his review of the deeded conveyances of the Campanella property[,] specifically noting that said deed description notes that the property deeded traverses along the lands of Knickerbocker. Mr. Williams found this information relevant . . . since [Mr.] Ewald's map notes that the lands of Knickerbocker were located to the far east end of the original 250 foot tract[,] which would thus place the [Campanella] parcel to the far east end of the 250 foot tract. In that instance, [Mr.] Williams opined that [the] Campanella [property] does not encompass the disputed land strip of 26 feet.

Trial Ct. Op., 2/13/25, at 1-4 (some formatting altered).

As described above, Appellant testified that she obtained title to the Campanella property by way of the 2012 Campanella deed from her mother, Mrs. Davis. *See* N.T., 8/15/22, at 7-8. The 2012 Campanella deed conveyed two separate pieces of property: Parcel I and Parcel II, with Parcel I being the Campanella property, conveyed by special warranty, and Parcel II being a quit claim conveyance. *See* R.R. at 185a-87a (Ex. P-1, 2012 Campanella Deed).[1] In a statement of adverse possession recorded concurrently with the 2012 Campanella deed, Mrs. Davis declared that she had "acquired title in

_____

[1] We may cite to the reproduced record for the parties' convenience.

- 3 -

fee" to Parcel II by adversely possessing the land for a period of twenty-one years, beginning in 1971. R.R. at 182a-84a (Ex. P-1, Statement of Adverse Possession, 1/16/13). Subsequent to execution of the 2012 Campanella deed, in a separate action filed by Appellant, a quiet title judgment was entered on September 19, 2013, recognizing Appellant's claim of adverse possession to Parcel II. **See** Ex. P-1 (Docket No. 762-2013, Quiet Title Judgment, 9/19/13).

At trial, Mr. Ewald, admitted as Appellant's expert witness in land surveying, testified that he first surveyed the disputed property at the request of Mrs. Davis, in 2008. N.T., 8/15/22, at 68-69. For the 2008 survey, Mr. Ewald reviewed the deeds that conveyed the Campanella and Mertz properties to the prior title holders before Appellant and Appellee. **Id.** at 68-70. As part of the 2008 survey, Mr. Ewald reviewed a survey map prepared in 1988 by Pat Addio, depicting the Mertz and Campanella properties. **Id.** at 72; **see also** Ex. P-19. In 2008, Mr. Ewald also performed a field survey to determine the property line between the Campanella and Mertz properties, in which he identified four monuments of what he at that time believed were the boundary lines of the Mertz property. **See** N.T., 8/15/22, at 69-74;[2] **see also**, Ex. P-3.

---

[2] Specifically, regarding the results of his first survey, Mr. Ewald testified that in 2008, when he measured 118 feet from the Geise property boundary line, he found the following evidence of a boundary line for what he believed at that time was the Mertz property : "[a] railroad spike in [R]iver [R]oad, a pipe down by the river[,] and a bit of iron fence that was up across the road towards the railroad." **Id.** at 74. He also found an "iron pipe which would
*(Footnote Continued Next Page)*

In 2012, at the request of Appellant's counsel, Mr. Ewald performed a second survey to again determine the boundary line between the Campanella and Mertz properties. **See** N.T., 8/15/22, at 77-78. For the second survey, Mr. Ewald reviewed the abstracts of title for the Campanella and Mertz properties to locate the original boundary lines for the parcels and identified the 1910 Sawyer deed as a parent parcel to both the Campanella and Mertz properties. **Id.** at 78-79.[3] Mr. Ewald indicated the boundaries of the property conveyed in the 1910 Sawyer deed on the Ewald survey map and described the Sawyer parent parcel as a 250-foot by 106-foot rectangular area. **Id.** at 80; **see also** Ex. P-3. Mr. Ewald testified that three conveyances came out of the Sawyer parent parcel; specifically, a 56-foot by 106-foot lot conveyed to Geise (Geise property), a 50-foot by 106-foot lot conveyed to Hart (Hart property), and a 118-foot by 106-foot lot (Celim Seymour property) conveyed to Celim Seymour in 1911 (1911 Celim Seymour deed). **See** N.T., 8/15/22, at 82-88**; see also** Ex. P-3. Mr. Ewald testified that the chain of title for the Geise property described the conveyance by employing an adjoinder call to

_____

mark . . . the southwesterly most corner of the Mertz parcel on the railroad side." **Id.** at 75. On the Ewald survey map, these monuments are located at the northeasterly boundary line of the Geise property (an iron pipe) and 26 feet southwest of the southwesterly Knickerbocker boundary line (a railroad spike, an iron pipe, and an iron fence). **See** Ex. P-3.

[3] Specifically, Mr. Ewald identified the deed as a conveyance from William Sawyer to Wilbur W. Sawyer, dated January 24, 1910 and recorded in deed book 63, page 621. **Id.** at 79; **see also** Exs. P-1 (Item 8) and P-2 (Item 10).

the "lands of Lehman," which he explained was now the Mertz Property. *Id.* at 83-84.[4]

Mr. Ewald testified that the Mertz property was conveyed from the Celim Seymour property and indicated on the Ewald survey map the boundary lines he had identified for the Celim Seymour property. *See* N.T., 8/15/22, at 86-89; *see also* Ex. P-3. Mr. Ewald further testified that the Celim Seymour property was the "parent parcel" of the Campanella and Mertz properties. N.T., 8/15/22, at 88-90, *see also* N.T., 8/15/22, at 104 (where Mr. Ewald again references the "118 foot piece" as "our true parent parcel").

Next, Mr. Ewald testified that on December 11, 1923, Celim Seymour conveyed a 45-foot by 106-foot parcel from the Celim Seymour property to Fayette L. Seymour (1923 Fayette Seymour deed). *See* N.T., 8/15/22, at 90.[5] Mr. Ewald explained that in 2008 he had been "under the impression

_____

[4] We note that the parties treat the term 'adjoinder' as a call to an adjoining property and that Black's Law Dictionary defines "adjoining" as "[t]ouching; sharing a common boundary; contiguous[,]" and defines "adjoining owner" as "[s]omeone who owns land abutting another's." *See Adjoining* & *Adjoining Owner,* Black's Law Dictionary (12th ed. 2024).

[5] The 1923 Fayette Seymour deed's property location description reads:

> BEGINNING at a stone near the Delaware River, and running thence north 57½ degrees west [106] feet to the line of the Erie Railroad Company's lands; thence north along the line of the said Erie Railroad Company's land [45] feet to a stone; thence south 57½ degrees east along the lands of Olive Knickerbocker [106] feet to the Delaware River, and thence down the said Delaware River [45] feet to the place of beginning.

*(Footnote Continued Next Page)*

that the 45 foot was adjacent to it, but in reality we found out differently[,]" that is, "[t]hat the 45 feet came out of the 118 foot" parcel." *Id.*; *see also id.* at 102. Based on the deeds in the chains of title and his field survey work, Mr. Ewald opined that the "45 foot by 106 foot parcel of land . . . described in the [2012 Campanella deed] . . . came out of the 118 foot piece" of the Celim Seymour property. *Id.* at 102.

Mr. Ewald testified that his final conclusion regarding the location of the boundary line between the Campanella and Mertz properties differed from his 2008 conclusion as indicated in the Ewald survey map because in the second survey he examined the language of the relevant deeds more thoroughly. *See id.* at 104-05. Mr. Ewald also testified that he realized what had "caused the confusion here is they thought they were on Knickerbocker's line[,] which would be at the 250 [foot mark of the Sawyer parent parcel], but in reality they were 26 feet down further" than the location he had indicated on the Ewald survey map based on his 2008 survey. *Id.* at 104; *see also* Ex. P-3.

On cross examination, Mr. Ewald testified that the lines on his 2008 survey map were accurate but that his conclusions as to what the lines represented changed after he reviewed the complete chain of title for the properties. *See* N.T., 8/15/22, at 108. Mr. Ewald conceded that the location

_____

Ex. P-1 (1923 Fayette Seymour deed).

of the boundary line between the Campanella and Mertz properties was dependent on which end of the parcel to locate a 26 foot portion of land. *See id.* at 111, 119. Mr. Ewald opined that while there was conflicting evidence regarding at which end of the Campanella property the 26 foot portion was located there was "much more certainty" to locating the 26 foot portion on the southwest end, and that the evidence in favor of locating the 26 foot portion at the northeast end of the property was "very vague." *Id.* at 111.[6]

Mr. Williams, admitted as Appellee's expert witness in land surveying, agreed with Mr. Ewald that the dimensions of the Campanella property were 45 feet wide by 106 feet long. *See* N.T., 10/3/22, at 7. To determine the boundaries of the Campanella property, Mr. Williams first located the

_____

[6] Mr. Ewald testified on cross as follows:

Q: Could the 26 feet have been a mistake as far as where it's located whether it's on one end of the [Campanella] parcel or the other?

A: I don't believe so because of the evidence we have on the southwesterly end of the Mertz parcel which is in harmony with the east parcel and in harmony with the Hart parcel, so we definitely have a much more certainty that you start from the southwest and move to the northeast, . . . but very vague as to Knickerbocker's location I guess is what I want to say.

N.T., 8/15/22, at at 111.

In addition, the trial court understood Appellee's position to be that the location of the Campanella property was 26 feet to the right of where Appellant placed the boundary line. Specifically, the trial court stated that Appellee was "trying to establish . . . sliding that 45 foot [Campanella property] to the right which would be . . . the northeast portion of the property of the original 250." *Id.* at 122.

Knickerbocker property and indicated on the Ewald survey map the southwesterly boundary line of the Knickerbocker property. *See id.* at 12; *see also* Ex. P-3. Mr. Williams then indicated his opinion of the location of the Campanella property, identifying the southwesterly Knickerbocker boundary line as the northeasterly boundary line of the Campanella property. *See* N.T., 10/3/22, 13-15; *see also* Ex. P-3. Mr. Williams located the Campanella property 26 feet further northeast of where Mr. Ewald had located the property. *See* Ex. P-3.

On cross examination, Mr. Williams agreed with Mr. Ewald that three conveyances came from the Sawyer parent parcel in the parties' chains of title. Specifically, he agreed that the 50-foot by 106-foot Hart property was located at the south end of the Sawyer parent parcel and had the same point of beginning as the Sawyer parent parcel, that the 56-foot by 106-foot Geise property adjoined the Hart property, and that Sawyer had conveyed a 118-foot by 106-foot property to Celim Seymour in 1911. *See* N.T, 10/3/22, at 23-27. Mr. Williams also agreed that the 1923 Fayette Seymour deed conveyed out 45 feet from the 118 foot line of the Celim Seymour property. *Id.* at 30, 31-33.[7] Mr. Williams acknowledged that the description of the Geise

_____

[7]    Q: [T]he [Sawyers] acquired the 250 foot piece, they sold off 50 feet, they sold off 56 feet and they conveyed 118 feet and according to the deeds out of the 118 feet came the 45 feet; is that correct?
    A: Okay.

*Id.* at 33.

property indicated that it had "a common boundary line" with the Mertz property and that the Geise property was "adjacent to the Mertz property." *Id.* at 37-38. Mr. Williams agreed that the 118-foot by 106-foot property description in Appellee's deed to the Mertz property was accurately represented as drawn by Mr. Ewald on the Ewald survey map. *Id.* at 39; *see also* Ex. P-3.

Mr. Williams testified that the adjoinder call to the lands of Knickerbocker in the Mertz property's chain of title first appeared in the 1911 Celim Seymour deed, but that he did not know the exact location of the Knickerbocker property. *See* N.T, 10/3/22, at 40-41. Mr. Williams agreed with Mr. Ewald that the three conveyances out of the Sawyer parent parcel added up to 224 feet, leaving a 26-foot portion of land from the original 250-foot Sawyer parent parcel unaccounted for in those three conveyances. *Id.* at 41. Mr. Williams agreed that both the Ewald and Addio survey maps depicted the 118-foot Celim Seymour property, as established in the chain of title for the Mertz property, as directly adjoining the Geise property. *Id.* at 45-47; *see also* Exs. P-3, P-19.

Mr. Williams opined that the Campanella property was located 26 feet further in a northerly direction than where Mr. Ewald had located it and explained that his conclusion was based on the call to the lands of Knickerbocker in the chain of title. *See* N.T., 10/3/22, at 43, 47-48. Mr. Williams agreed that if the Campanella property was located where he proposed that this location would shift the boundary line for the Mertz property

northerly by 26 feet, which might result in the new boundary line for the Mertz property running though Appellee's house. *Id.* at 47-48. Mr. Williams admitted that he had not conducted a field survey of nor visited the disputed properties and that his opinion was based on his review of the deeds in the chain of title and survey maps prepared by other land surveyors. *Id.* at 45, 55. Mr. Williams did not undermine or discredit any of the monuments or landmarks depicted in any of these survey maps, including the Ewald survey map. *Id.* at 55-57.

On re-direct, Mr. Williams testified that he was not aware of any other deeds conveying out any further property from the Sawyer parent parcel and speculated that the 118-foot distance referenced in the chain of title for the Mertz property "could be" in error due to the unaccounted-for 26 feet from the Sawyer parent parcel. *Id.* at 61.

On July 1, 2024, the trial court entered a verdict in favor of Appellee and dismissed Appellant's ejectment and trespass actions. *See* Trial Ct. Order, 7/1/24. Appellant filed a motion for post-trial relief which, after oral argument, the trial court denied on November 8, 2024. Appellant then filed a timely notice of appeal.[8]

_____

[8] On January 2, 2025, this Court issued a rule to show cause directing Appellant to praecipe the trial court prothonotary to "enter judgment on the decision of the trial court" and file with this Court "a certified copy of the trial court docket reflecting the entry of the judgment." *See*, Order, 1/2/25. On January 13, 2025, Appellant filed a praecipe for final judgment with the trial court. *See* Appellant's Praecipe, 1/13/25. In the certified record, attached to

*(Footnote Continued Next Page)*

On appeal, Appellant raises the following claims:

1. Whether the trial court erred as a matter of law by applying the incorrect standard of proof, leading to a wrongful determination that the 45-foot parcel conveyed by Celim H. Seymour to Fayette L. Seymour in 1923 was a separate and distinct conveyance from the original 250-foot parcel conveyed to Wilbur W. Sawyer in 1910?

2. Whether the trial court erred in concluding that the 45-foot parcel was conveyed out of the original 250-foot parcel, as the record evidence, including testimony and exhibits, clearly shows it was conveyed out of the 118-foot parcel, not the 250-foot parcel?

3. Whether the trial court erred in finding that the common source of title for the parties' respective properties was the 1910 conveyance from Sawyer to Sawyer, when the correct common source is the 118-foot parcel conveyed from Wilbur W. Sawyer to Celim H. Seymour, as agreed by all relevant witnesses?

4. Whether the trial court erred by misinterpreting the testimony of Robert Ewald, which clearly established that [Appellant's] property abuts [Appellee's] property, as it emanates from the

_____

Appellant's timestamped praecipe, is a document styled "Final Judgment" that states in its entirety: "AND NOW, this 13th day of January, 2025, Final Judgment is hereby entered in favor of Defendant, Peter Mertz, and against Plaintiff, Dianne M. Campanella." *See id.* The document bears the signature stamp of the trial court prothonotary but does not bear a file stamp. *See id.* On January 15, 2025, Appellant filed an updated certified trial court docket with this Court; therein, the last docket entry reads: "1/13/25 PRAECIPE FOR ENTRY OF FINAL JUDGMENT FILED." *See* Appellant's Resp. to Rule, 1/15/25. On January 22, 2025, this Court discharged the rule to show cause. *See*, Order, 1/22/25.

While no entry for 'final judgment' appears in the docket, because Appellant timely filed a praecipe for the trial court prothonotary to enter final judgment and the certified record includes the "Final Judgment" document described above, we conclude that final judgment was entered by the trial court prothonotary despite the lack of a docket entry. Accordingly, Appellant has established a final, appealable order in this matter and we may proceed to review it. *See* Pa.R.A.P. 341(a).

same 118-foot parent parcel, contrary to the court's conclusion?

5. Whether the trial court erred in acknowledging that Robert Ewald testified there was a mistake in the Campanella chain of title, failing to properly address the 45-foot portion of land?

6. Whether the trial court erred by misapprehending the significance of the reference to Knickerbocker in [Appellant's] chain of title, failing to recognize it as an adjoinder?

Appellant's Brief at 3-4.

Appellant claims that she established title to the disputed property in her ejectment action by a preponderance of the evidence. *Id.* at 29-34. Appellant contends that, "[w]here there is a common source of title from the same Grantor, the title of the . . . Grantee in conveyance first executed is superior." *Id.* at 38 (citing *Wynsinki v. Mazzotta*, 472 A.2d 680 (Pa. Super. 1984)). Appellant argues that the common source of title for the Campanella and Mertz properties was the 1911 Celim Seymour deed, as this deed marked "the inception of a division of land with clear dimensional markers." *Id.* at 40-41.

Appellant further claims that the trial court based its conclusions on "an erroneous interpretation" of the 1911 Celim Seymour deed, and "a mischaracterization of the evidence and a legal failure to reconcile minor record defects with the equitable and factual realities of property ownership." *Id.* at 37, 44. Appellant characterizes the reference to the Knickerbocker property in Appellant's chain of title as "a clerical or interpretative error" and that the trial court erred in relying on the Knickerbocker adjoinder call to

determine the boundaries of the Campanella property.  *Id.* at 46.  Specifically,
Appellant contends that, because "the Knickerbocker parcel is not contiguous"
to the Campanella property, the trial court erred in treating it as an 'adjoinder'
property; rather, Appellant argues, the boundary line between the Campanella
and Mertz properties "is marked by an established iron pin."  *Id.* at 27, 46.

Appellee responds that the issue here is the location of, rather than title
to, the Campanella property.  *See* Appellee's Brief at 17.  Appellee notes that
the trial court was presented with "conflicting information as to the location of
the Campanella [property]" and argues that Mr. Ewald's testimony
contradicted the conclusions in the Ewald survey map.  *Id.* at 8-9, 11 (some
formatting altered).  Appellee contends that the trial court was free to give
effect to the Knickerbocker adjoinder reference in the chain of title.  *Id.* at 9-
10.  Once the trial court concluded that the Knickerbocker adjoinder reference
should be given effect, Appellee argues that the trial court was then free to
conclude that the 45-foot width of the Campanella property "start[ed] from
the Sawyer/Knickerbocker boundary."  *Id.* at 10.  Consequently, Appellee
argues that the trial court correctly concluded that Appellant failed to prove
by a preponderance of the evidence that the Campanella property contained
the 26 feet of land disputed by the parties.  *Id.* at 17.

**Standard of Review**

We review a trial court's verdict in a non-jury trial:

> to determine whether the findings of the trial court are supported
> by competent evidence and whether the trial court committed
> error in any application of the law.  The findings of fact of the trial

- 14 -

judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law are not binding on an appellate court[, however,] because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Wyatt Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa. Super. 2009) (citation omitted and some formatting altered); *see also Doman v. Brogan*, 592 A.2d 104, 110 (Pa. Super. 1991).

## Applicable Law

"The crux of an ejectment action . . . rests with the plaintiff['s] ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title." *Billig v. Skvarla*, 853 A.2d 1042, 1050-51 (Pa. Super. 2004) (citations omitted). Further,

to prevail in an ejectment action, the plaintiff must show title at the commencement of the action and can recover . . . only on the strength of his [or her] own title, not because of weakness or deficiency of title in the defendant. If a plaintiff in ejectment has presented at trial *prima facie* evidence that it has title to the property at issue, the burden then shifts to the defendant . . . . Conversely, if the plaintiff's claimed chain of title is faulty, the plaintiff has not shown a *prima facie* case, and the plaintiff's ejectment case fails.

*Becker v. Wishard*, 202 A.3d 718, 722 (Pa. Super. 2019) (citations omitted and some formatting altered).

- 15 -

Further, in a cause of action related to real property, "[q]uestions regarding the location of boundaries are a question of fact for the fact-finder." *Long Run Timber Co. v. Dept. of Conservation and Natural Resources*, 145 A.3d 1217, 1228 (Pa. Cmwlth. 2016) (citation omitted).[9] The interpretation of deeds, however, is a question of law subject to a *de novo* standard of review and a plenary scope of review. *See Kripp v. Kripp*, 849 A.2d 1159, 1164 n.5 (Pa. 2004). Our Supreme Court set forth the following standard for a trial court's interpretation of a deed:

> The same principles that apply to the interpretation of a contract apply to the interpretation of a deed. The nature and quantity of the interest conveyed by a deed must be ascertained from the instrument itself. . . . We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words. . . . Thus, the language of the deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed. If the deed is ambiguous, then all of the attending circumstances existing **at the time of the execution of the instrument** should be considered to aid in determining the apparent object of the parties. When parol evidence is admissible, it must generally have a foundation in pre-existing evidence of fraud, accident or mistake, except when it is introduced not to contradict or vary, but to explain the contract, as when something is omitted . . . so as to qualify [such evidence] to interpret it truly according to the intent of the parties.

*Starling v. Lake Meade Property Owners Ass'n, Inc.*, 162 A.3d 327, 341 (Pa. 2017) (citations omitted, emphasis original, some formatting altered).

_____

[9] We may cite to decisions of the Commonwealth Court for persuasive value. *See In re Brown*, 30 A.3d 1200, 1204 n.2 (Pa. Super. 2011).

This Court in **Doman** reviewed a matter where "the precise location of boundaries" was not clear from "a plain reading of a written deed" or, in other words, "[w]here there exists an uncertainty due to the use of vague or ambiguous language." **Doman**, 592 A.2d at 108-09. In resolving such a dispute, **Doman** held that the trial court may resort to:

> extrinsic or parol evidence to explain – but not vary – the written word . . . . Resort might also be had to the subsequent acts of the parties as bearing on the interpretation they placed on the instrument.

> \* \* \*

> . . . Thus, in an ejectment action parol evidence is competent to **explain** ambiguities, but not to **vary** or **contradict** a boundary description contained within a deed[.]

> \* \* \*

> . . . [T]o ascertain and effectuate the intent of the parties' at the time of the original [conveyance] . . . our courts have employed certain rules of construction[.]

> \* \* \*

> Where the calls for the location of the boundaries to land are inconsistent, other things being equal, resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries (which are considered a sort of monument), and thereafter to courses and distances.

> \* \* \*

> [I]t is generally believed that erroneous descriptions are more probably found in calls for measurements and distances than in calls for fixed landmarks either natural or artificial.

**Id.** at 109-10 (citations omitted). The **Doman** Court cautioned against a mechanical application of these rules of construction, however, and held that the purpose of interpretation of an ambiguous deed is to ascertain the parties'

intentions based on the "totality of [the] combined effect" of the calls in the property description. *Id.* at 110 (citation omitted).

### Analysis

Here, the trial court stated:

The Campanella [property's] title chain consistently described that land as running along the lands of Knickerbocker. Mr. Ewald plotted out the lands of Knickerbocker to the eastern side of the Campanella [property]. Although [Appellant's predecessor] filed a statement of adverse possession . . . and [Appellant filed an] action to quiet title with regard to some land comprising part of the Knickerbocker land and the [Campanella property], that adverse possession claim did not appear to quiet title to the extra [26] feet of land still unaccounted for or resolve the title discrepancy of that parcel. Since [Appellant] was unable to prove immediate possession to the [26] feet of disputed land which is the subject of this action, this court dismissed her claim of ejectment [and, on the same basis, her trespass claim].

\*     \*     \*

. . . The parties' survey experts both testified that the common parcel of the parties' current properties originates from the 1910 Sawyer deed. . . . [W]hether the [45] foot parcel was subsequently conveyed out of the original parcel is not germane to the court's ultimate findings[.]

In its June 28, 2024 order, this court concluded that Mr. Ewald's testimony did not establish that [the] Campanella [property] abuts the Mertz [property] and that, if such was the case, there remained an additional [26] feet of land which would abut the former lands of Knickerbocker on the far east end of the original 250 foot parcel. . . . [T]he court determined [Mr.] Ewald's testimony, when weighed against the remaining evidence of the case, including, *inter alia*, [Mr.] Williams' expert testimony, was insufficient to prove [Appellant's] immediate exclusive right to the disputed land.

\*     \*     \*

[The court] concluded that the [26] foot parcel in question would be located to the east of the land in dispute and not be the land

on the common boundary line of [the] Campanella and Mertz [properties].

Trial Ct. Op., 2/13/25, at 5, 8-10 (some formatting altered).[10]

After a careful review of the record, we find that the trial court's conclusion that Appellant failed to carry her burden of proof was supported by the evidence presented at trial. *See Billig*, 853 A.2d at 1050-51. The call to the lands of Knickerbocker appeared in the description of the property in the Campanella property's chain of title, going back to 1911. *See* N.T., 10/3/22, at 40-41. Appellant argues that the call to Knickerbocker was an error and should be disregarded in favor of other evidence, such as the monuments in the field and the distance measurement in the deeds. *See* Appellant's Brief at 46. *Doman* holds, however, that parol evidence may not be employed "to vary or contradict a boundary description contained within a deed" and, further, that the call to an adjoinder typically carries more weight than the call to a distance. *Doman*, 592 A.2d at 109-10. Accordingly, the trial court was within its discretion to apply the Knickerbocker adjoinder call in the Campanella property's chain of title to identify the boundaries of the property, and to correspondingly disregard conflicting calls in the chain of title for other

_____

[10] We note that the trial court in its opinion states that the Campanella and Mertz properties do not abut each other, but also that the properties share a common boundary line. *See id.* While they may be contradictory, these statements do not impact the trial court's dispositive conclusion that the 45-foot width of the Campanella property should be measured from the Knickerbocker boundary line, which results in Appellant's property location falling short of the disputed portion of land.

nearby or adjoining properties. *See id.*; *see also Long Run Timber Co.*, 145 A.3d at 1228; *Starling*, 162 A.3d at 341. Further, we detect no error in the trial court's legal interpretation of the applicable property descriptions in the chain of title pursuant to our *de novo* and plenary review of the relevant deeds. *See Kripp*, 849 A.2d, 1164 n.5. Therefore, the trial court did not abuse its discretion or commit an error of law in concluding that Appellant failed to prove by a preponderance of the evidence that she held title to the land in dispute. *See Wyatt Inc.*, 976 A.2d at 564; *see also Doman*, 592 A.2d at 110; *Kripp*, 849 A.2d, 1164 n.5; *Becker*, 202 A.3d at 722; *Billig*, 853 A.2d at 1050-51.[11]

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/26/2026

---

[11] We note that while Mr. Ewald testified that he identified artificial monuments in the field in support of his opinion of the location of the Campanella property i.e., an iron pipe and iron fencing, these monuments did not appear in the deeds in the chain of title for the Campanella property and, accordingly, the trial court was not required to rely on these monuments over the Knickerbocker adjoinder call. *See* N.T., 8/15/22, at 74-75; *see also Doman*, 592 A.2d at 109-10.